CLARK THREAD CO. v. ARMITAGE.

(Circuit Court, S. D. New York. May 22, 1895.)

1. UNFAIR COMPETITION—FRAUD OF PLAINTIFF.
   Fraud, such as to disentitle a plaintiff to relief against unfair competition in his business, cannot be predicated of statements which, owing to the brevity required by the limited space of a label, are not minutely accurate; nor of the use on two classes of goods of labels which might be mistaken for each other, the statements on both being true; nor of the use, to a limited extent, of the name of a firm to which the plaintiff believed itself to have succeeded; nor of the use of "trade talk" in advertisements.

2. SAME—CORPORATE NAME—ESTOPPEL.
   Defendant was incorporated as the William Clark Thread Company. Plaintiff, the Clark Thread Company, objected to this name; and, at the suggestion of its managing director and treasurer, defendant's name was

changed to the William Clark Company. *Held*, that plaintiff was estopped to object afterwards to the use by defendant of the amended name.

**8. SAME—IMITATION OF LABELS.**
Plaintiff had established, by a long course of successful dealing, a high reputation and extensive market for the thread manufactured and sold by it, which was known as "Clark's Thread," and was put up on spools each bearing a round label, with the name "Clark's" in the upper part of the circle, the words "Spool Cotton" in the lower part, and the letters "O. N. T.," separated by periods, horizontally across the middle. Defendant, immediately after its incorporation, began the manufacture of thread, which it put up on spools with a label in all respects like plaintiff's, except that it bore the letters "N-E-W," separated by hyphens, in place of the letters on plaintiff's labels. *Held*, that defendant's label was calculated to create confusion and misunderstanding, and that plaintiff was entitled to an injunction restraining the defendant from using the word "Clark" or "Clark's" in connection with thread manufactured by the William Clark Company.

**4. SAME—USE OF NAME.**
*Held*, further, that plaintiff's right was not impaired by the fact that another manufacturer, whose goods came little into competition with plaintiff's, had long used the name "Clark's" in connection with thread, with plaintiff's assent.

This was a suit by the Clark Thread Company against Herbert G. Armitage to restrain the use of a label. The cause was heard on the pleadings and proofs.

Rowland Cox and Charles B. Meyer, for complainant.

C. E. Mitchell and H. D. Donnelly, for defendant.

COXE, District Judge. This action is brought to restrain unfair competition in trade. Both parties are dealers in spool cotton. The complainant is a New Jersey corporation created in 1865 and engaged in the manufacture and sale of "Clark's O. N. T. Spool Cotton." The defendant is the manager of the William Clark Company which is also a New Jersey corporation organized in May, 1891, for the purpose of manufacturing and selling thread. It began the sale of its product in October, 1892, under the name of "Clark's N-E-W-Spool Cotton." It is conceded that the case is to proceed upon the same principles of law as if the William Clark Company were the defendant. The contention on the part of the complainant is that the defendant's cotton is put up and advertised so that purchasers are led to believe that they are buying a new brand of the complainant's cotton. In other words, the allegation is that the public believes it is purchasing a new brand of an old and well-known manufacturer whose reputation is firmly established by 30 years of honest endeavor, and not the untried product of an unknown corporation with no years, no history and no good will behind it. The complainant prays for an injunction restraining the defendant from using the name of "The William Clark Company," or "Clark," or "Clark's N-E-W-" in connection with spool cotton. The defenses are first, that the complainant is guilty of fraud and misrepresentation in advertising its goods and is, therefore, entitled to no relief in a court of equity. Second. The William Clark Company was named after its principal incorporator who had a right to give his name to the company. Its use in the trade is,

therefore, proper and lawful. Third. The complainant is estopped from attempting to enjoin the corporate name for the reason that its officers and agents not only acquiesced in the name but even suggested it. Fourth. The name "Clark," in connection with thread, does not belong exclusively to complainant, but for years had been used by persons named Clark to designate their goods. Fifth. The proof fails to establish a case of unfair competition.

It is thought that the defendant has not succceded in proving the charge of false representation. The code of morals by which the defendant seeks to test the complainant's acts is so strict that, if it were assented to, very few business houses which exploit their goods by advertising—certainly not the defendant himself—could escape condemnation. There are doubtless inaccuracies on some of the complainant's boxes and labels. Information is omitted which might have been supplied and assertions are made which, possibly, may convey erroneous impressions. It must be remembered, however, that the complainant was limited as to space. Epigrammatical expressions were unavoidable. When one's statements are confined to the end of a spool it is necessary to be concise. A box cover is not a favorable place on which to trace a pedigree. It is said that there was suppressio veri, if not actual falsehood, in the statement on some of the boxes, "Manufactory established in 1812." If the complainant had been in a position to relate the details of its genealogy it is possible that a more accurate idea might have been conveyed. Such a history, in the actual environment, was out of the question. The statement as it was intended to be understood, and doubtless was understood, is sufficiently accurate. A merchant, occupying a modern building in which his customers are heated by steam, lighted by electricity and hoisted and dropped through many stories in express elevators, might truthfully place upon the granite arch over his door "Established in 1800." No one would understand this statement literally; no one would for a moment believe that the cloud-piercing structure before him was built in 1800, or that the merchant, or any of his assistants, were doing business there or elsewhere nearly a century ago. The idea conveyed would be that somewhere and by some one a business was established in 1800 and that the merchant in question had succeeded to its good will. So, when the complainant placed upon its boxes, "Manufactory established in 1812," a customer, if he attached any importance at all to the statement, would probably conclude that complainant had succeeded in some way to the rights of those who began making thread in 1812, and so it had. He would hardly imagine that complainant was making thread in an antiquated building erected three-quarters of a century ago. If he did entertain this notion he would probably conclude to purchase his thread elsewhere. So, too, it is impossible to predicate fraud of the use of the black and gold label on the three-cord cotton. Complainant uses a black and gold label on its six-cord thread and the label contains the words "Six Cord." On the three-cord cotton, of which a relatively insignificant amount is made, the words "Six Cord" are omitted. The argument is that

the public, having been accustomed to see a similar label on six-cord thread, will suppose that the three-cord cotton is six-cord cotton, although there is no statement to that effect upon the label. This will not do. A party cannot be charged with fraud in making a false statement as to part of his goods when the proof is that the statement is made regarding other goods as to which it is absolutely true.

The complainant is also accused of fraud because years ago, to a very limited extent, it put up and sold cotton on black spools with the name of "J. & J. Clark & Co., Paisley," on the box cover, indicating that it was manufactured by that firm at Paisley, Scotland. Only one box of this thread was found and introduced in evidence, the complainant admitting that it and similar boxes were at one time put up and sold by it. There is testimony to show that in former years thread was sent here by the Paisley firm in an unbleached condition and was bleached and spooled by the complainant. This "Blackwood" thread constituted such an insignificant part of the complainant's business that it is impossible to assume that anything was done malo animo regarding it. If the complainant believed that it was the legitimate successor of J. & J. Clark & Co. in this country, and the thread was made, though not completed for the market, at Paisley, it is difficult to see how the complainant is guilty of fraud in this connection. Fraud cannot be presumed. The question is not what was the technical, legal effect of all the transfers and changes in the business of the various firms and corporations, but what the complainant believed, and had a right to believe, regarding them. If its officers asserted only what they honestly believed to be true, with no intent to mislead the public, there is no fraud. So far as the court is able to understand the complicated history of the succession from the old Paisley firm, it is thought that no material statement made by the complainant is unfounded. But even though the complainant took too sanguine a view as to its derivative rights, it cannot be convicted of fraud if it honestly believed that it possessed them. The court understands that the complainant has none of the "Blackwood" thread on hand and discontinued its sale some time prior to the commencement of this action.

Again, the complainant is charged with fraud in saying that its thread is "sold everywhere." No sane man would understand this literally. If "everywhere" when so used is synonymous with "the earth," the complainant can be convicted of falsehood by proof that Clark's thread is unknown in Tasmania or Siam. The statement is on a par with the equally modest suggestion of the defendant that his thread is "the latest and the best." This harmless exaggeration is understood and discounted by all. It is not fraud, but merely "trade talk." No one is deceived. No one is injured.

It is unnecessary to pursue this subject further. All of the alleged frauds can be explained upon a theory compatible with honesty. Some of the most serious accusations relate to representations which were discontinued long before the commencement of this action and had reference to matters so trivial as to preclude absolutely the idea of fraud. One who is honest as to millions is not likely to

develop into a petty thief. If the statements complained of had been made animo furandi, it is hardly possible that they would have been confined to a part of the business so infinitesimal. In short, the record fails to show any motive for the alleged false statements. There is no proof that any one ever was defrauded and it is impossible to perceive how any one could be defrauded thereby.

The defendant's company was first incorporated as "The William Clark Thread Company" on the 7th of May, 1891. The complainant objected to this name and an interview took place between the officers of the two companies for the purpose of arranging the difficulty. At the suggestion of the complainant's managing director and treasurer the corporate name was changed by striking out the word "Thread," leaving it as it is to-day, "The William Clark Company." This is sworn to by two witnesses and is denied by the complainant only in the most general way, if at all. Witnesses who were present at the interview in the interests of the complainant were not called to contradict the testimony. The weight of evidence and the presumptions from the complainant's silence are all overwhelmingly to the effect that the complainant consented to the use of the present corporate name. This must be regarded as an established fact. Corporations usually act through agents. The treasurer represented the complainant upon this occasion. The interview was an official one, no resolution of the board of directors was necessary. The complainant, through its treasurer, having induced the William Clark Company to strike out the word "Thread" from its corporate name and adopt its present name, cannot be heard to complain. Harmony was purchased on the part of the defendant's company by adopting the complainant's suggestion. Complainant should not be permitted now to repudiate its own terms of peace and punish the defendant for using a name which was agreed upon as unobjectionable. Had the William Clark Company supposed that its agents could be attacked for using its present name it might have preferred, for the sake of peace, to change it still further, or to retire altogether rather than face an expensive litigation. It had a right to assume that all disagreement regarding its name was settled forever. Having made a treaty of peace the parties must be held to its stipulations.

The complainant has built up a splendid business. For 30 years it has been engaged in making thread in this country. Its thread is universally recognized as an honest and reliable product. It is so firmly established in certain sections that it practically has a monopoly. "Clark's thread" is sought for and used to the exclusion of all other brands. The demand is for the complainant's thread, and, though other thread is used to a limited extent, it is not too much to say that in certain localities the market belongs to the complainant. It has taken capital, industry and years of arduous endeavor to produce this result. If the complainant had not dealt honestly with the public it would not be in this position to-day. Its success is due to the fact that for a generation it has furnished an article in which the people had faith. This good will is the complainant's inheritance and its property. It is as much a part of its assets as its mill or its counting house. No one has a right to destroy it except by fair and

honest competition. No other manufacturer has a right to take away the complainant's customers by inducing them to believe that they are purchasing the complainant's goods.

The defendant corporation began doing business in the autumn of 1892. When this suit was commenced, in January, 1893, it had been selling its product less than four months; it had at that time no past and no good will; it entered the field as a new comer with its fortune to make; its thread was unknown and untried; the public verdict had not been rendered. Undoubtedly the defendant was at liberty to use all legitimate means to gain popularity for this thread, but it is equally true that he was not permitted to trade upon the complainant's reputation and induce people to believe that his thread was a new brand emanating from the Clark Thread Company; concealing the fact that it was an entirely new thread, the product of a corporation which had not been six months in operative existence. The defendant's company was not entitled to warm itself into being in the sunlight of the complainant's reputation. The chief incorporator was William Clark. He was at liberty to avail himself of whatever reputation he had gained as a thread maker while in the employ of the complainant, but it was unlawful for him so to act that the public was deceived as to the true condition of affairs. That a party has a right to use his surname honestly is clearly established, but in the case of a corporation there is no such thing as a surname or a Christian name. Had William Clark been doing business as an individual the presumption of unfair competition would be more difficult to draw. When, however, he gives his name to a corporation, an act of doubtful propriety, but for complainant's consent, and then, failing to use the corporate name, advertises his goods by a name used for 30 years to distinguish the complainant's goods, the motive can hardly be doubted. The defendant's company is an artificial person; its name is "The William Clark Company"; it has no Christian name and no surname; its name is not "Clark," or "Clark's;" it began its existence in May, 1891. It is no answer to say that "Clark" is a part of its name; so are the letters O. N. T. If it were incorporated under the name of "The Clarkson Company" the argument would be equally available. The defendant cannot escape the charge of unfair competition by alleging that he is using the corporate name, for he is not. He is using complainant's trade name and the fact that complainant's trade name happens to be a part of the name of the corporation which he represents does not give him a right to use it. In short, to paraphrase the language of the court in Croft v. Day, 7 Beav. 84: "He has a right to carry on the business of a thread manufacturer honestly and fairly; he has a right to the use of his own name; I will not do anything to deprive him of that or any other name calculated to benefit himself in an honest way; but I must prevent him from using it in such a way as to deceive and defraud the public." The complainant has a right to invoke the rule so plainly stated in Levy v. Walker, 10 Ch. Div. 447, and say to the defendant: "You must not use a name, whether fictitious or real—you must not use a description, whether

true or not, which is intended to represent, or calculated to represent, to the world that your business is my business, and so, by fraudulent misstatement, deprive me of the profits of the business which would otherwise come to me."

It would be a jejune and idle proceeding to comment upon the numerous authorities to which the attention of the court is called by counsel. In the recent case of Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, the leading cases have been collected and the law applicable to this subject is clearly stated. The facts in that case are very similar to the facts here. There being no proof that the plaintiff had consented to the defendant's corporate name, the court enjoined its use, thus going a step further than the court is required to go in the case at bar. The general principles of law as there enunciated may be considered as furnishing a rule for this case.

The court cannot resist the conclusion that the public may be led to believe that the defendant's thread is the product of the old company; in other words, that it is "Clark's thread" as known in the market for so many years. The principal label adopted by the defendant, which is used on the bottom of spools, on box covers and generally in the business, is calculated to induce purchasers to believe that defendant's thread is either the old thread under a new label, or a new and improved brand of the old thread. Compare this label with the principal label of complainant. The name "Clark's" appears on each printed in the same heavy Gothic type and occupies identically the same position in the upper half of the circle. The same is true of the words "Spool Cotton" in the lower half. Horizontally across the middle of the complainant's label are the letters O. N. T. separated by periods. They are white letters on a dark background. Horizontally across the middle of the defendant's label are the letters N-E-W- separated by hyphens. They are white letters on a dark background. That this would not mislead an expert or a wholesale dealer may as well be conceded, but it is equally true that it is calculated to deceive small buyers. Women who use thread are not apt to be critically observing in such matters. Minute details make small impression upon their minds. They remember the salient features, not the unimportant ones. They are the partisans of Clark or Coats or some other manufacturer, and when they visit the store of the retail dealer they call for their favorite thread. Is it not too plain to admit of serious doubt that a woman who had all her life used the complainant's thread who should ask a salesman for a spool of "Clark's thread, No. 50," would receive the defendant's No. 50 and pay for it in perfect confidence that she was getting what she wanted? If she had a spool of O. N. T. with her so that she could compare the labels the differences might attract her attention. If she followed the matter up and made inquiries she might learn the whole truth. But it is altogether likely that she would have no means of comparison, and if the difference in the label made any impression she would probably conclude that Clark had put a new brand of thread on the market. That this label is calcu-

lated to create confusion and misunderstanding seems obvious on its face; that it and the other devices resorted to by the defendant have produced confusion is abundantly proved by the testimony. Those who read this record impartially must, it seems to the court, be impressed with the idea that the defendant's company has reaped an unfair advantage by the use of the name "Clark." If the chief incorporator had been named William Thompson instead of William Clark, and the thread had been put upon the market as "Thompson's" instead of "Clark's," is it fair to suppose that it would have made such headway in complainant's territory and among its old customers? William Thompson might have been as accomplished a thread maker as William Clark, but the public, never having heard of Thompson's thread, would look on it as an interloper and handle it with caution. "Clark's thread," on the contrary, needed no introduction, the public knew all about it.

There is no doubt about the rule of law applicable to this branch of the case. The senior counsel for the defendant states the rule as the court understands it to be. After arguing that the William Clark Company is justified in using its corporate name he says:

"This being the case it follows that it can use its own name upon its own goods provided it does not accompany them with simulative indicia calculated and intended to create the impression that goods of its manufacture are the complainant's goods. ＊　＊　＊　Of course, I concede that the name, however legitimately worn, cannot be accompanied with simulative indicia, intended to enable the defendant to palm off its goods as the plaintiff's."

Again he says:

"The question here presented to your honor is a pure question of fact. That question is, has this plaintiff shown that the expression 'Clark's Spool Cotton' points so distinctively in the public mind to the plaintiff, as distinguished from all others, that its use necessarily and per se is an invasion of its rights?"

Although the evidence may not enable the court to say that the expression points distinctively to the complainant, it is thought that the evidence does show that the use of the expression in the manner adopted by the defendant is an invasion of the complainant's rights. We are dealing now with the rights of these parties as they existed at the commencement of this action. There was a time when "Clark's thread" had no well-defined secondary meaning. So many Clarks were engaged in the business that the expression in question did not convey any definite impression to the mind. Times have changed since then. Long before the commencement of this suit the business of the complainant had increased enormously. Others had been absorbed or discontinued business, so that when this action was commenced the complainant so dominated and controlled the market that "Clark's thread" was synonymous with complainant's thread in certain localities, and was understood at all times by a majority of people to relate to complainant's thread.

The chief exception is the "Mile-End Cotton." The manufacturers of that brand had as good if not a better right than the complainant to use the expression referred to, but their product is made to a comparatively limited extent and in some localities is almost unknown.

Certainly it is fair to say that the two concerns practically divided the market for "Clark's thread" between them. The business was so arranged and systematized that there was no clashing. For some time prior to 1892 the expression in question meant either the complainant's thread, or the "Mile-End" thread, but generally the complainant's. It seems to be tacitly admitted that if the complainant at the commencement of the action had the sole right to use the expression "Clark's thread," so that it had acquired a secondary meaning in connection with complainant's thread alone, that its use by the defendant should be restrained. The argument is that this right is lost because the complainant did not possess it exclusively; that because the "Mile-End" Clarks have a right to use the expression all other Clarks have an equal right. The court does not so understand the law. The contrary is, it is thought, asserted by the following authorities: Newman v. Alvord, 51 N. Y. 189, 195; William Rogers Manuf'g Co. v. Rogers & Spurr Manuf'g Co., 11 Fed. 495; Croft v. Day, 7 Beav. 88. It is true that these cases are not precisely similar, on the facts, to the case at bar. No two cases are exactly alike. It is always possible to distinguish. The effort, however, in these and similar cases is to arrive at justice. The broad principle underlying them all is that property shall be protected from unlawful assaults. That where a party has for long years advertised his goods by a certain name so that they are distinguished in the market by that name the court will not permit a newcomer, by assuming that name, to destroy or impair an established business even though others may have acquired the right to use the name legitimately. A., who has a right to a trade name, may prevent C., who has no right, from using it even though B., who has an equal right with A., does not object to the use by C. One who has an interest in the preserve can without the co-operation of his cotenant, punish the common poacher.

It follows that the complainant is entitled to a decree for an injunction restraining the defendant from using the word "Clark," or "Clark's" in connection with the thread manufactured by "The William Clark Company." Of course the court does not intend to intimate that the defendant may not use the corporate name of said company in any way he may desire, provided it is not printed in such a manner as to be a practical violation of the injunction against the use of the word "Clark." The letters N. E. W. are chiefly mischievous in connection with the word "Clark's"; their use at this time need not be restrained. As the complainant has succeeded only in part it should not recover costs.