EDWIN A. MENEELY et al., Appellants, *v.* CLINTON H.
MENEELY et al., Respondents.

A person cannot make a trade mark of his own name and thus debar others,
having the same name, from using it in their business.

Every man has the absolute right to use his own name in his own business,
even though he may thereby interfere with and injure the business of
another bearing the same name; provided he does not resort to any
artifice, or do any act calculated to mislead the public as to the identity
of the establishments, and to produce injury to the other beyond that
which results from the similarity of the names.

(Argued April 14, 1875; decided September 21, 1875.)

APPEAL from order of the General Term of the Supreme
Court in the third judicial department, reversing a judgment
in favor of plaintiffs entered upon the report of a referee,
and granting a new trial. (Reported below, 1 Hun, 673; 3
T. & C., 540.)

This action was brought to restrain defendants from using
the name "Meneely" in the business of bell founding at
Troy.

The facts, as found by the referee, are substantially as
follows :

Andrew Meneely, the father of the plaintiffs and of the
defendant Clinton H. Meneely, commenced the business of

making and selling church and other bells in 1826, at West Troy, New York, and there established a bell foundry, which he continued to carry on until in 1851, when the plaintiff Edwin A. Meneely entered into copartnership with him; and they carried on the business at the same place, and in the same foundry, until the death of Andrew Meneely, which occurred October 14, 1851. After the death of the said Andrew Meneely, the plaintiffs, as copartners, have carried on the business at the same place, and in the same foundry. Prior to the time when Edwin A. Meneely became a partner, the business was carried on in the name of Andrew Meneely; during the period that Edwin A. Meneely was a partner with his father, it was carried on in the name of Andrew Meneely & Son, and after the death of Andrew Meneely it was carried on by the plaintiffs in the name of Andrew Meneely's Sons, till in 1863, and from that time it has been carried on by the plaintiffs in the name of E. A. & G. R. Meneely. The foundry so established has, ever since it was established, been known as the " Meneely bell foundry ; " and, by reason of the skill bestowed upon the manufacture of bells, has achieved a great and favorable reputation; and the Meneely bell has become well known, and has been and is extensively purchased; and the " Meneely bell foundry," and more particularly the name of " Meneely " in connection therewith, has become a designation or trade mark of great celebrity and value to the plaintiffs. Plaintiffs have cast upon the bells manufacured by them (except small ones), " Meneely's, West Troy, N. Y." On the 1st day of June, 1870, the defendants, Clinton H. Meneely and George H. Kimberly, entered into a copartnership for the purpose of manufacturing, at the city of Troy, and selling bells of the same description manufactured and sold by the plaintiffs; the name of the partnership so formed was " Meneely & Kimberly," by which firm name defendants advertised themselves. Said firm commenced manufacturing bells at their foundry in Troy, and selling them in January, 1871. They cast upon the bells manufactured

by them the words and letters, " Meneely & Kimberly, Troy, N. Y."

The referee found that the defendants, by the use of the name of " Meneely " in the establishment of their bell foundry at Troy, and in manufacturing and selling bells at Troy under the name of Meneely & Kimberly, expected and intended to derive a profit and advantage by reason of the good reputation and celebrity in bell founding given to that name throughout the country by the said Andrew Meneely and the plaintiffs. That the use of the name of " Meneely " by the defendants, as hereinbefore set forth, is calculated to, and does, mislead persons who are not personally acquainted with the plaintiffs and defendants, nor with the respective locations of Troy and West Troy, and the difference between those places, into the belief that the defendants are the proprietors of the " Meneely bell foundry" carried on by the plaintiffs; and such use of the name of Meneely by the defendants is injurious to the plaintiffs' business of bell founding.

And, as conclusions of law, that Andrew Meneely, in his lifetime, acquired a property in, and became the owner of the name " Meneely," as a valuable trade mark in the business of bell founding. That the plaintiffs, under and by the last will and testament of said Andrew Meneely, succeeded to the rights and property of the said Andrew Meneely, in said name of " Meneely " as a trade mark in the business of bell founding. And that the defendants have no right to use the name " Meneely " in the business of bell founding at Troy, to the injury of the plaintiffs. And he directed judgment that an injunction issue restraining defendants from using the name and designation " Meneely " in the business of bell founding at Troy.

*John H. Reynolds* for the appellants. Plaintiffs were entitled to the exclusive use of the name Meneely in their business. (*Crofts* v. *Day*, 7 Beav., 84.) A man has not a right to use his own name in a business, if the intention or tendency is to injure another or impose upon the public. (*Crofts* v. *Day*, 7 Beav., 84; *Sykes* v. *Sykes*, 3 B. & C., 541;

*Burgess* v. *Burgess,* 17 E. L. and Eq., 257; *Holloway* v. *Holloway,* 13 Beav., 209; *Clark* v. *Clark,* 25 Barb., 79; *Howe* v. *The Howe Machine Co.,* 50 id., 236; *Scheitzer* v. *Adkins,* 46 L. R. [37 N. S.], 847.) The practice of actual and deliberate fraud and deceit by defendants to plaintiffs' injury, was not necessary to entitle plaintiffs to the relief demanded. (*Hookam* v. *Pottage,* L. R. [8 Ch. App.], 91; *Glenny* v. *Smith,* 2 Dr. & Sm., 476; *Crofts* v. *Day,* 7 Beav., 84; *Holmes* v. *Holmes,* 27 Conn., 278; *Mer. Brit. Co.* v. *Parker,* 39 id., 450.)

*Irving Browne* for the respondents. Defendants not having been guilty of fraud, dishonesty or deceit in the formation or conduct of their business, this action cannot be maintained. (*Corwin* v. *Day,* 7 Bosw., 233; *Wolfe* v. *Burke,* 56 N. Y., 115; *Meyer* v. *Amidon,* 45 id., 169; *Candee* v. *Deere,* 54 Ill., 439.) A person cannot be restrained from using his own name honestly in his own business, although his name and business shall be identical with that of other parties previously domiciled and at work in the same locality. (*Amos. Mfg. Co.* v. *Spear,* 2 Sand., 607; *Sykes* v. *Sykes,* 3 B. & C., 541; *Crofts* v. *Day,* 7 Beav., 84; *Rodgers* v. *Nowill,* 5 M., G. & S., 109; *Holloway* v. *Holloway,* 13 Beav., 209; *Burgess* v. *Burgess,* 17 E. L. and E., 257; *Clark* v. *Clark,* 25 Barb., 79; *Edelsten* v. *Edelsten,* 1 De G., J. & S., 185; *Howe* v. *Howe Machine Co.,* 50 Barb., 236; *Faber* v. *Faber,* 49 id., 357; *Schweitzer* v. *Atkins,* 46 L. J. [37 N. S.], Ch., 847; *Stonebraker* v. *Stonebraker,* 33 Md., 252; *Helmbold* v. *Helmbold,* N. Y. Sun, 1872; *James* v. *James,* L. R., 13 Eq. Cas., 421; *Laurens* v. *Laurens,* Brown's Trade Marks, 402; *Caminade* v. *Caminade,* id., 402; *Mer. Brit. Co.* v. *Parker,* 39 Conn., 450; *Wolfe* v. *Burke,* 7 Lans., 156; *Pinand* v. *Pinand,* id., 403; *Roederer* v. *Roederer,* id., 329; Brown's Trade Marks, 143, 246, 314.)

RAPALLO, J. The injunction awarded by the decision of the referee restrained the defendants from in any way using the name and designation " Meneely " in the business of bell

founding in the city of Troy. The name of one of the defendants is Meneely, and he was engaged in the business mentioned. The necessary consequence of the injunction was to compel the defendant Meneely either to discontinue his business of bell founding at Troy or procure it to be conducted in the name of some other person. He was absolutely prohibited from the use of his own name in his own business, in any way.

The bare statement of the scope of the injunction would seem to be sufficient to show that it ought not to have been granted and that the judgment awarding it was erroneous.

The cases referred to in its support fall far short of sustaining it. If the defendants were using the name of Meneely with the intention of holding themselves out as the successors of Andrew Meneely and as the proprietors and managers of the old established foundry which was being conducted by the plaintiffs, and thus enticing away the plaintiffs' customers, and if with that intention they used the name in such a way as to make it appear to be that of the plaintiffs' firm, or resorted to any artifice to induce the belief that the establishment of the defendants was the same as that of the plaintiffs, and, perhaps, if without any fraudulent intent they had done acts calculated to mislead the public as to the identity of the establishments and produce injury to the plaintiffs beyond that which resulted from the similarity of name, then the cases referred to sustain the proposition, not that a court of equity would absolutely restrain the defendant Meneely from the use of his own name in any way or form, but simply that the court would enjoin him from using it in such a way as to deceive the public and injure the plaintiffs. The manner of using the name is all that would be enjoined, not the simple use of it; for every man has the absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical,

or do any thing calculated to mislead. Where the only confusion created is that which results from the similarity of the names the courts will not interfere. A person cannot make a trade mark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business.

This principle is fully recognized in the cases cited in the briefs of counsel. They have been so fully commented on in the learned opinion of my brother, MILLER, J., delivered at General Term, that I do not deem it necessary or proper again to review them in detail. A reference to a few of them will suffice. In the case of *Croft* v. *Day* (7 Beav., 84) the intention of the defendants to imitate the blacking manufactured by the plaintiffs, under the name of Day & Martin, and to sell it as theirs, was apparent. The master of the rolls stated : " My decision does not depend on any peculiar or exclusive right the plaintiffs have to use the name Day & Martin, but upon the fact of the defendants using their names in connection with certain circumstances, and in a manner calculated to mislead the public and to enable the defendant to obtain, at the expense of Day's estate, a benefit for himself to which he is not in fair and honest dealing entitled. * * * He has a right to carry on the business of a blacking manufacturer honestly and fairly ; he has a right to the use of his own name. I will not do any thing to debar him from the use of that or any other name calculated to benefit himself in an honest way ; but I must prevent him from using it in such a way as to deceive and defraud the public." The form of the injunction was settled after argument. It did not restrain the defendants from the use of their names of Day & Martin, but from selling blacking in bottles having labels so contrived as to represent it to be the same as that sold by the plaintiffs. *Rodgers* v. *Nowill* (5 Man., Gr. & Scott, 109) was an action for damages. The defendant used not merely the firm name of the plaintiffs, but their trade mark of a crown with the letters V. and R., on either side, above the name; and the verdict was sustained on that ground.

*Sykes* v. *Sykes* (3 B. & Cr., 541) was a similar action, and decided on the same principle. The plaintiff had adopted the mark, " Sykes patent," which the defendant imitated in order to denote that the goods sold by him were of plaintiff's manufacture ; the defendant had never had any patent, and he imitated the plaintiff's stamp.

In *Holloway* v. *Holloway* (13 Beav., 209) the defendant did not merely sell his pills as " H. Holloway's Pills," but sold them in boxes and with labels and wrappers made in imitation of those of the plaintiff, and manufactured for the express purpose of deceiving. The court in that case said : " The defendant's name being Holloway, he has a right to constitute himself a vendor of Holloway's pills and ointment; and I do not intend to say any thing tending to abridge that right ; but he has no right to do so with such additions to his own name as to deceive the public, and make them believe he is selling the plaintiff's pills and ointment." The injunction in that case was not against selling pills as " Holloway's pills," etc., but against selling them as such put up in boxes, etc., having labels so contrived or expressed as by colorable imitation, or otherwise, to represent them to be the same pills, etc., as were sold by the plaintiff. In *Clark* v. *Clark* (25 Barb., 79) the plaintiff had adopted a device which contained the name Clark & Co. The defendant's was a copy of the plaintiff's device, except that it contained the name of J. Clark, Jr., & Co. The injunction was sustained as to the device, but not as to the name. In *Faber* v. *Faber* (49 Barb., 357) an injunction restraining the defendant from using his own name as a mark upon his pencils, though interfering with a similar business previously established by another person of the same name, was refused, and I find no precedent for such an injunction. (See also, *Burgess* v. *Burgess*, 17 Eng. L. and E., 257, and *Meriden Britannia Co.* v. *Parker*, 39 Conn., 450.) In the case last cited the plaintiff's trade mark or stamp was " 1847, Rogers Bros., A. 1." The defendant stamped like goods manufactured by him, " C. Rogers Bros., A. 1," and " C. Rogers &

Bros., A. 1." The plaintiff prayed for an injunction against the use of their stamps or of any stamp of which the word "Rogers," or "Rogers Bros.," should form the whole or a part. The court granted the injunction as to the stamp and as to the use of the words "Rogers Bros.," but refused to prohibit the use of the name, "Rogers."

In the present case the injunction consists wholly of a prohibition of the use of the name "Meneely" in any way. It is in conflict with all the cases upon the subject. If the evidence showed any attempt by the defendants, by means of catalogues or by any other contrivance, to induce the belief that the firm of Meneely & Kimberly was the successor of Andrew Meneely, or the managers of the plaintiff's bell foundry, those acts might have been restrained; but no such injunction was granted or asked for. The use of the name "Meneely," in any way, was all that was enjoined, and that was the very thing which should not have been enjoined.

We think that the General Term did right in reversing the judgment and ordering a new trial; and the order must, consequently, be affirmed, with costs, and judgment absolute rendered for the defendants, in pursuance of the stipulation.

All concur; MILLER, J., not sitting.

Order affirmed and judgment accordingly.