FRANK E. DE LONG and Others, Respondents, *v.* DE LONG HOOK AND EYE COMPANY, Appellant.

*Trade mark — when the use by a corporation of the name of one of its incorporators will be enjoined.*

A man may use his own name because he cannot truthfully do business under any other, and the law protects that right ordinarily, even when such use is injurious to another who has previously established a business of the same kind and gained a reputation which goes with the name. But the courts require that the name shall be honestly used by him, and will permit no deceit calculated to mislead the public into purchasing his goods under the belief that they are the manufacture of another.

In an action brought to restrain the use of a trade mark, it appeared that in the year 1889 the plaintiffs put upon the market a hook and eye which they called "The De Long Hook and Eye." They were sewed upon cards, at the top of which was printed "The De Long Hook and Eye." With advertising and at considerable expense, the plaintiffs built up a very large business.

Subsequently one Oscar A. De Long, having conceived the idea of making a change or improvement in the hook, formed, with other persons, a corporation known as the "De Long Hook and Eye Company," which thereafter com-

# 400 DE LONG v. DE LONG HOOK AND EYE CO.

menced the manufacture and sale of hooks and eyes sewed upon cardboard in the same manner as the plaintiffs', each of which cards bore the words, "De Long Hook and Eye Company, Makers, New York." Later there was pasted over these words the words, "Oscar A. De Long's Improved."

The effect intended and accomplished by the use of the word "De Long," in connection with the style of the card on which the hooks and eyes were placed, was to secure some part at least of the benefits resulting from the extensive advertising which the plaintiffs had given to the name "De Long" in connection with the hook and eye business. There were some slight differences in the name, variations of coloring and size of cards and shape of hooks, and some difference in the printed matter on the cards.

*Held*, that as the hooks and eyes placed upon the market by the defendant were so arranged and exhibited as to give a purchaser the impression that they were the plaintiff's hooks and eyes, it was within the province of a court of equity to interfere for the protection of the purchasing public as well as of the plaintiffs, and for the suppression of unfair and dishonest competition;

That the fact that one of the incorporators and stockholders of the defendant bore the name of De Long, gave the corporation no immunity from the consequences which ordinarily flow from an attempt to deceive the public by the fraudulent use of another's name, since the promoters of the corporation could have given to it the name of either of the other incorporators or any other name they liked, provided the designation was honestly made and without injury to others;

That the circumstances surrounding the creation of the defendant and the name of it were such as to show that the selection of the name was not an honest one, but a part of the original scheme of Oscar A. De Long to make such use of his own name as would enable him to profit by the name which the plaintiffs had given to their hooks and eyes and which they had made valuable by much labor and a liberal expenditure of money; that the corporation would not be permitted to make use of a name acquired in such a manner and for such a purpose.

APPEAL by the defendant, the De Long Hook and Eye Company, from an interlocutory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 9th day of January, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

*Joseph H. Choate, Edward Wetmore* and *Benno Loewy*, for the appellant.

*Frederick R. Coudert* and *C. E. Rushmore*, for the respondents.

PARKER, J.:

The learned judge at Special Term decided that the defendant corporation should be restrained from using in selling or placing

upon the market, its goods, the name " De Long Hook and Eye Company," upon the ground that the selection of such name was made with intent to identify the defendant with the plaintiffs' business, to the injury of the latter, and that its use is calculated to induce deception and confusion in the public mind as to the identity of the goods sold by the plaintiffs and defendant respectively.

An attentive examination of the evidence satisfies us that the determination of fact made at the Special Term, as a basis for its decision, is right. Undoubtedly the phenomenal growth of plaintiffs' business, and the large profits derived therefrom, suggested to one of the promoters of the defendant corporation the feasibility of deriving a substantial benefit from the reputation of plaintiffs' goods, known as De Long's Hooks and Eyes, because of the fact that his name happened to be De Long.

The facts which support this conclusion were so fully discussed in the opinion of the learned judge at Special Term that it is unnecessary for us to do more than present an outline of the more important features.

The plaintiffs put upon the market, in the year 1889, a hook and eye which they called " the De Long Hook & Eye." They were sewed upon cards, at the top of which was printed " The De Long Hook & Eye." With much advertising skill, and at considerable expense, the plaintiffs rapidly built up a large business. The sales, which were about $12,000 in 1890, reached nearly $450,000 in 1893. In the summer of 1892, Oscar A. De Long, a buyer for one of the departments of a large mercantile house, and who had from time to time purchased the plaintiffs' hooks and eyes to be sold at retail by his employers, conceived the idea of making a change in the hook, which he calls an improvement, and in the latter part of that year he sought capital necessary to enable him to engage in the hook and eye business. He found persons willing to enter into the enterprise with him, and as a result a corporation was formed with the corporate name of the " De Long Hook & Eye Company."

Immediately thereafter the company commenced the manufacture and sale of hooks and eyes sewed upon cards in the same manner as the plaintiffs', each of which bore the words " De Long Hook & Eye Company, makers, New York."

Later he pasted over those words the words " Oscar A. De Long's

Improved," posting the words thus covered up on the back of the card on a label. The effect intended and accomplished by the use of the word De Long, in connection with the style of the card on which the hooks and eyes were placed, was to secure some part, at least, of the benefit resulting from the extensive advertising which the plaintiffs had given to the name De Long in connection with their hook and eye business.

It is not conceivable that it could have been otherwise, but we are not left to conjecture, for the plaintiffs, in support of their contention that the method adopted by the defendant was intended to, and did, deceive the public, produced witnesses who testified in effect that in response to requests made to dealers for De Long hooks and eyes they were given defendant's hooks and eyes, when they desired the plaintiffs'.

Starting then with the determination of fact by the Special Term, which we approve, that the defendant deliberately attempted to make such use of the name of one of its incorporators as to enable it to secure a portion of the business which plaintiffs had built up, we have no difficulty in arriving at the legal conclusion reached by that court.

That there were slight differences in the name, variations of coloring and size of cards and shape of hooks and some difference in printed matter on the cards must be conceded. "Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another." (BRADLEY, J., in *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. Rep. 94.)

The real test in such cases is whether the thing offered for sale is so arranged and exhibited that when it strikes the eye of an intending purchaser, possessed with ordinary intelligence and judgment, a false impression is likely to be produced that the goods of another are being offered for sale. And when that inquiry must be answered in the affirmative, as it has been in this case, " it is the province of equity to interfere for the protection of the purchasing public as well as of the plaintiffs, and for the suppression of unfair and dishonest competition." (*Fischer* v. *Blank*, 138 N. Y. 252.)

This equity will do where the business practices complained of may not be of such a nature as to enable the party aggrieved to obtain redress under the restrictive rules of law, if, nevertheless,

they are of such a character as to offend that law of fairness which should govern the acts of men.

This doctrine has frequently been asserted in other jurisdictions besides our own. In *Coats* v. *Merrick Thread Company* (149 U. S., at page 566) the court said : " Rival manufacturers may lawfully compete for the patronage of. the public in the quality and price of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right by imitative devices to beguile the public into buying their wares under the impression they are buying those of their rivals."

And in *Lawrence Mfg. Company* v. *The Tenn. Mfg. Company* (138 U. S. 537) the court said : " Undoubtedly an unfair and fraudulent competition against the business of the plaintiff — conducted with the intent on the part of the defendant to avail itself of the reputation of the plaintiff to palm off its goods as plaintiff's — would, in a proper case, constitute ground for relief."

It is the appellant's contention that, notwithstanding the determination of the court that defendant's conduct in the use of the word " De Long," was intended to deceive the public and enable it to sell its goods as if they were plaintiffs' goods, and, therefore, fraudulent, still it cannot be visited with the consequences which ordinarily flow from such action, because of the fact that one of its incorporators and stockholders bore the name of De Long.

A man may use his own name because he cannot truthfully do business under any other, and the law protects that right ordinarily, even when such use is injurious to another who has established a prior business of the same kind, and gained a reputation which goes with the name. Even then the courts require that the name shall be honestly used, and will permit no deceit calculated to mislead the public into purchasing his goods under the belief that they are the manufacture of another. But that is not this case, for the promoters of this corporation could have given to it the name of either of the other incorporators, or any other name they liked, provided the designation was honestly made and without injury to others. But the circumstances surrounding the creation of the defendant, and the name of it, satisfy us, as they did the trial court, that the selection of the name was not an honest one, but a part of the original

FIRST DEPARTMENT, OCTOBER TERM, 1895. [Vol. 89.

scheme of Oscar A. De Long to make such use of his own name as would enable him to profit by the name which the plaintiffs had given to their hooks and eyes, and which they had made valuable by much labor and a liberal expenditure of money.

The recent case of *Higgins Company* v. *Higgins Soap Company* (144 N. Y. 462), decided since the entry of the judgment appealed from, is conclusive upon the proposition that a corporation will not be permitted to make use of a name thus acquired and for such purposes. In that case it appeared that Charles S. Higgins commenced the manufacture of soap for the market in 1846 ; after a time his son, bearing the same name, became interested with him in the business, to which he succeeded upon the death of the senior Higgins. In 1890 the junior Higgins and others formed a corporation called the "Charles S. Higgins Company," to which was sold and transferred the soap business of Higgins, together with the good will, labels, trade marks, etc. · The article manufactured was known to the trade as Higgins soap. About a year after the corporation commenced the conduct of the soap business, some trouble arose among its officers and directors, resulting in the removal of Higgins from its presidency. As in the bill of sale to the corporation Higgins had reserved the right to engage in the manufacture of soap in the event of a termination of his employment by the corporation, he at once commenced preparations to that end. A corporation called the "Higgins Soap Company" was organized under the laws of New Jersey, and Charles S. Higgins was chosen as its president. Impressed upon its bars of soap and printed upon its wrappers were the words "Higgins Soap Company."

The suit to restrain the Higgins Soap Company from making use of its corporate name was unsuccessfully prosecuted until it reached the Court of Appeals, where it was held the injunction should issue. In the course of the argument the court said : "The inference seems irresistible that the defendant assumed its corporate name so that it should carry the impression that it was the manufacturer of Higgins soap, so well known to the public. But if the name was assumed in good faith and without design to mislead the public and acquire the plaintiff's trade, the defendant, knowing the facts, must be held to the same responsibility as if it acted under the honest impression that no right of the plaintiff was invaded."

In this case Oscar A. De Long, the original promoter of defendant, knew all the facts. He even had a conversation with the plaintiff De Long, in which a mutual attempt was made to discover whether there was any relationship existing between them, and this was some little time before he took any steps looking to the establishment of the hook and eye business. And further than that, the facts before us are such, as we have already said, as to require the inference that he brought about the naming of the defendant with the intent that the public should receive the impression that it was the manufacturer of " De Long's Hooks and Eyes," so well and favorably known to the public.

The court further decided in *Higgins'* case that the defendant derived no additional immunity from the fact that the name of " Higgins," in its corporate name, was that of one or more of its incorporators, or that one of its members might have engaged in the same business under his own name, or had consented to the use of the name by the defendant. The decision in *Higgins'* case answers the contention of the appellant as to that point. The same proposition was recently asserted in *William Rogers Mfg. Co.* v. *R. W. Rogers Company* (66 Fed. Rep. 66).

In view of the comment which the court made in *Higgins'* case (*supra*) upon *Meneely* v. *Meneely* (62 N. Y. 427), it is sufficient to say in this case that it is not in point.

While fully concurring with the main features of the judgment, we, nevertheless, think the complaint of the appellant, that the judgment is too broad, is well founded. It is certainly more comprehensive than either the decision or the opinion of the trial court. We find no authority in this record for holding that the defendant may not manufacture and sell hooks and eyes of the character which it was manufacturing. Nor are we able to find any basis for the claim that the plaintiffs have the exclusive right to the use of cards to hold hooks. In so far as the judgment restrains the defendant from using the word " De Long " the judgment should be affirmed, but it should not embarrass the defendant in any honest effort which it may hereafter make to put its goods upon the market in a manner which shall not have the effect of persuading customers that the defendant's goods are the manufacture of the plaintiffs.

It would seem as if its present form might have that effect; there-

fore, the judgment should be modified by inserting between the word "restrain" and the word "and," at the end of the first adjudication in the judgment, the following : "But nothing herein shall operate to prevent the defendant from manufacturing and selling hooks and eyes, put up in any form which shall not violate the trade mark of the plaintiffs, or have the effect of inducing the ordinary purchaser to buy defendant's goods, believing them to be manufactured by the plaintiffs."

We do not find in the complaint any allegation, nor in the record any testimony, as to the value of the subject-matter involved in this suit. The extra allowance, therefore, seems to have been without authority, and the appellant is entitled to a modification of the judgment in that respect. (*Hanover Fire Insurance Company* v. *The Germania Fire Insurance Company*, 138 N. Y. 252.)

The judgment should be modified in accordance with this opinion, and as modified affirmed, without costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment modified as directed in opinion, and as modified affirmed, without costs.