(24 Misc. Rep. 83.)

## S. HOWES CO. v. HOWES GRAIN–CLEANER CO. et al.

(Supreme Court, Special Term, Chautauqua County. May 15, 1898.)

**1. Trade-Names—Exclusive Right—Infringement—Injunction.**

One S. Howes for many years was engaged in manufacturing grain-cleaning machinery, stamping it with his name, trade-mark, and the place of manufacture. The machinery became known to the trade as "Howes machinery," and acquired a widespread reputation for excellence. On his death the executors continued the business under his name, and then conveyed the plant, trade-mark, and good will to his children and legatees, who organized plaintiff corporation for the purpose of carrying on the business, naming it "The S. Howes Company." Plaintiff carried on the business under this name for a year, when defendant corporation was organized. One Charles N. Howes, one of the executors of S. Howes, conveyed to defendant the right to use his name; and it adopted "Howes" as part of its corporate name, and engaged in manufacturing similar machinery. *Held*, that plaintiff had the exclusive right to the use of the name "Howes."

**2. Same.**

The fact that the executors had failed to expressly transfer the right to the use of the name "Howes" to the legatees or plaintiff did not deprive it of such right.

**3. Same—Damages.**

Damages sustained through the unlawful use of a trade-name will not be allowed, where they are slight, and plaintiff did not object promptly to the unlawful use.

Action by the S. Howes Company against the Howes Grain-Cleaner Company and others for an injunction. Permanent injunction granted.

Norris Morey, for plaintiff.

George E. Towne (W. S. Thrasher, of counsel), for defendants.

LAUGHLIN, J. Simeon Howes was engaged in the business of manufacturing grain cleaners and grain-cleaning machinery at Silver Creek, Chautauqua county, N. Y., from 1856 until the month of February, 1892, when he died. The greater part of this time he was associated with others as partners in the business, but during the last four years of his life he was sole owner and proprietor. He was one of the pioneers in this industry, and for upwards of 20 years preceding his death he was better known than any other manufacturer of such machinery. The products of his factory were also better known than those of any of his competitors. His reputation as a manufacturer of grain-cleaning machinery extended throughout North America and Europe, and reached other parts of the world. The machinery manufactured by him and his associates had a reputation for excellence equally extensive. This machinery was branded or stamped and known as "Eureka," which was a trade-mark, but the place of manufacture and the names of the manufacturers were also stamped upon the machines. The trade-mark name identified the machines to millers and persons interested in the milling business as the product of this business house. For many years this machinery was also quite generally known and spoken of by dealers and persons using or interested in such machinery as the "Howes machinery" or the

"Howes machines." Until the defendant commenced business, Simeon Howes was the only person by the name of "Howes" who had ever been engaged in manufacturing such machinery. The reputation of Simeon Howes for experience and skill in the manufacture of such machinery, and for fair dealing, extended the reputation of the goods of his manufacture beyond the places' where they were in use. His executors found that he had left an extensive, valuable business, in a prosperous condition, and they continued the business under the name "S. Howes" until January, 1895, when his children and legatees formed the plaintiff corporation, and the executors transferred to it the property, trade-marks, and good will of the business. From that time on the business was carried on by the plaintiff substantially as before. On the 13th day of February, 1896, the defendant filed its certificate of incorporation. Five of its seven incorporators, directors, and stockholders had, up to within two weeks of that day, been in the employ of the plaintiff. Charles N. Howes, who was one of such executors, and who was manager of the business for the executors, and continued in the plaintiff's employ until February 1, 1896, was elected president of the defendant. For many years immediately preceding the incorporation of the defendant, covering the period before as well as after the incorporation of the plaintiff. many business letters had been addressed and sent to the plaintiff and its predecessors under a variety of names other than the real corporate co-partnership or proprietor's name, and, among others, "The Howes Manufactory Company," "S. Howes Machine Company," "The Howes Grain-Elevator Company," "The Howes Company," "The Howes Grain Company," and "The S. Howes Grain-Cleaner Company." These facts were known to a majority of the incorporators of the defendant. The plaintiff's corporate name gives no indication of the nature of the business it was organized to carry on. The defendant's corporate name indicates its business quite accurately, but it as accurately indicates the business done by the plaintiff and its predecessors. The incorporators of the defendant deliberated on the selection of a name for the new company. Their attention was at that time drawn by one of their number to the question as to their right, as against the plaintiff, to use the name finally adopted. Some of the other incorporators of the defendant possessed as great a knowledge and experience in the business, and had as extensive a reputation and acquaintance, as Charles N. Howes, whose surname they used in their corporate title after purchasing the right so to do from him. The facts established give rise to the inference that these incorporators knew and realized that the name "Howes" was valuable in that line of business, on account of the reputation given to it by said Simeon Howes, and not on account of the reputation of Charles N. Howes, and that in thus using that name they expected to profit by the reputation of the former. The incorporators of the defendant doubtless reasoned, as they claim here, that, the right to the use of the name "Howes" not having been expressly transferred by the executors to the plaintiff, the latter could not claim the exclusive. use of such name in said business, as against them and the defendant corporation which they organized. The other incorporators were un-

doubtedly influenced by the same considerations. I cannot agree with such contention, and, if I did, the facts of this case require the application of other principles, fatal to the continuance of the use of the defendant's name in this business as heretofore. The evidence shows some confusion of business directly attributable to the similarity of these corporate names. Business letters of inquiry as to prices or machinery, preliminary to placing orders, have been addressed to and received by the defendant, when they were intended for the plaintiff. In some such instances the defendant, in addition to replying that it did not manufacture the particular machinery concerning which inquiries were made, took occasion to recommend its own machinery. The use of the name "Howes" in the defendant's corporate name under these circumstances has resulted in unfair competition, and amounts, at least, to a constructive fraud upon the rights of the plaintiff, and, upon principle and authority, authorizes and requires the granting of a permanent injunction. In re United States Mortg. Co., 83 Hun, 572, 32 N. Y. Supp. 11; R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 576, 70 Fed. 1017; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278; Higgins Co. v. Higgins Soap Co., 144 N. Y. 465, 39 N. E. 490; Garrett v. T. H. Garrett & Co., 24 C. C. A. 173, 78 Fed. 472; Richardson & Boynton Co. v. Richardson & Morgan Co. (Sup.) 8 N. Y. Supp. 52; Church v. Kresner, 26 App. Div. 349, 49 N. Y. Supp. 742; Wm. Rogers Mfg. Co. v. Rogers & Spurr. Mfg. Co., 11 Fed. 499; Massan v. Food Co., 14 Ch. Div. 748; Lever v. Goodwin, 36 Ch. Div. 1; McLean v. Fleming, 96 U. S. 245; Von Mumm v. Frash, 56 Fed. 833; Fischer v. Blank, 138 N. Y. 244, 33 N. E. 1040; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 869; Coats v. Thread Co., 149 U. S. 566, 13 Sup. Ct. 966; Pillsbury v. Mills Co., 12 C. C. A. 432, 64 Fed. 841; De Long v. Hook & Eye Co., 89 Hun, 399, 35 N. Y. Supp. 509; Power Co. v. Tuerk, 92 Hun, 65, 36 N. Y. Supp. 384; Turton v. Turton, 42 Ch. Div. 128; Meneely v. Meneely, 62 N. Y. 427.

The damages sustained by the plaintiff prior to the trial, and which can be proved with sufficient definiteness to warrant a recovery, are trifling in amount. The plaintiff did not promptly protest against the use of the defendant's corporate name. On these facts, and in accordance with well-considered precedents, I refrain from ordering a reference to compute the plaintiff's damages. McLean v. Fleming, 96 U. S. 245; Power Co. v. Tuerk, 92 Hun, 69, 36 N. Y. Supp. 384.

Since the granting of the injunction order, nearly a year and a half ago, the defendant has conducted its business under the name of "The Invincible Grain-Cleaner Co."; substituting "Invincible" for "Howes." Such name accurately describes its business, and embraces its trade-mark as well, and, without infringing upon the rights of the plaintiff, will enable it to establish a reputation for its own excellent machinery, and to transact its business advantageously and profitably.

A permanent injunction is granted as directed in the decision filed herewith.