---

WYCKOFF, SEAMANS & BENEDICT v. HOWE SCALE CO. OF 1886.

(Circuit Court of Appeals, Second Circuit. April 9, 1903.)

No. 56.

1. TRADE-NAMES—INFRINGEMENT—ADOPTION OF CORPORATE NAME.
    Complainant acquired from the corporation E. Remington & Sons, the original manufacturer of Remington typewriters, its typewriter business and good will, with the right to use the name "Remington." After the machines had become widely known by that name, two sons of a former president of the Remington company, also named Remington, acquired an interest in a typewriter invented by one Sholes, and a corporation was formed by them and others to manufacture the same under the name of the Remington-Sholes Typewriter Company, the machines being marked

---

¶ 1. Right to use one's own name, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Medicine Co., 27 C. C. A. 357.

"Remington-Sholes" and afterwards "Rem-Sho." *Held*, that the right of the Remingtons to use their own name in their business did not extend to the right to use it in the corporate name, or in marking the product of such corporation, in which they were only stockholders, where, as must have been known and intended, it would tend to produce confusion, through which some trade would be diverted from complainant, and that the company was properly enjoined from so using the name; but that the arbitrary name "Rem-Sho" was not sufficiently like Remington to be by itself a reasonable cause of confusion.

Wallace, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Vermont.

For opinion below, see 110 Fed. 520.

This cause comes here upon appeal from a decree of the Circuit Court, District of Vermont, granting an injunction against the use of the name "Remington" or its abbreviation "Rem" upon defendant's typewriting machines, or in the sale thereof. The nominal defendant is a sales agent only. The real defendant, which has assumed the defense of the suit, is the Remington-Sholes Company, of Chicago, Ill., and it will be understood that whenever the word "defendant" is used in this opinion it refers to the last-named corporation only.

George P. Fisher and Austin G. Fox, for appellant.
H. D. Donnelly and Edmund Wetmore, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The complainant is the successor of so much of the business of the corporation E. Remington & Sons (which succeeded the old firm of the same name), of Ilion, N. Y., as is concerned with the manufacture and sale of typewriters, including good will, trade-marks, etc. The old firm was organized into a corporation in 1865, and in 1873 it began the manufacture of typewriting machines. It is not disputed here that the firm and the corporation acquired a high and well-deserved reputation for careful workmanship in every branch of manufacture which it undertook; nor is it disputed that the typewriting machines which the corporation and its successor have continuously manufactured at Ilion are most favorably known to the public, and are associated in the public mind with the name "Remington," so that the ordinary purchaser is quite likely to assume that a machine offered to him for sale as a "Remington" has come from the establishment founded by the Remingtons at Ilion nearly half a century ago. To this manufacture and trade the complainant succeeded in 1886. It thereupon became entitled to conduct the business of manufacturing machines and selling them as Remington machines, and would have the right to invoke the aid of a court of equity to restrain another trader from any action which would be calculated unnecessarily to confuse the goods of his own make with those of complainant. The defendant is the Remington-Sholes Company. It marks its machines "Remington-Sholes" and "Rem-Sho," and there can be no doubt upon the record that the use of the name "Remington" helps the sale of machines, and induces many purchasers to suppose that such machines are the product of the old establishment at Ilion. Defendant, however, insists that it has the right to use that name because of its re-

lations with two gentlemen of the name of Remington; that it has done nothing else to produce confusion; and that, therefore, whatever confusion results is damnum absque injuria. We do not find in this voluminous record sufficient evidence that defendant has itself done anything to promote confusion in the minds of the public, except to use the name "Remington" on its machines and in its literature. It may very well be that it understood quite clearly that by thus using the name defendant gave to all middlemen and dealers outside of its own agents opportunity, and perhaps a suggestion, to misrepresent the parentage of the machines; but, if it had the right to use the same, it cannot be held responsible for the consequences of such use. On the other hand, if it had no right so to use the name, it cannot avoid responsibility merely because its agents were careful to explain, when selling to the trade, that the Remington-Sholes machines were not the product of the original Remington establishment or of its successor. In such a case the question is "whether the defendants have or have not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchasers." N. K. Fairbank Co. v. Bell, 23 C. C. A. 554, 77 Fed. 869.

The question here is whether the name "Remington-Sholes," which is defendant's designation, and which, therefore, impregnates all the literature it circulates with the name which complainant's predecessors made a household word, was fairly bestowed upon it; and whether the same name was fairly placed on the machines. The history of defendant's machines is as follows: In 1892, Zalmon G. Sholes (whose father had been an inventor of typewriters) invented a machine, constructed a working model of it, and subsequently a second model, the first having been destroyed by fire. He called this the "Z. G. Sholes" typewriter, and endeavored unsuccessfully to get sufficient capital to manufacture it for sale. In 1893 he became acquainted with Franklin Remington and Carter Remington, who were sons of Samuel Remington, at one time president of the original corporation at Ilion. These junior Remingtons had not been themselves engaged in the manufacture of typewriting machines, and at the time they met Sholes were engaged in some contracting work in Chicago in connection with the drainage canal. In August, 1893, they entered into an agreement with Sholes, becoming jointly interested with him in the enterprise, and endeavored to interest capitalists, their own means being insufficient. In November, 1893, the name of the machine was changed from the "Z. G. Sholes" to "Remington-Sholes"—that is to say, the name on the model was changed, and the parties interested began to talk of the machine as the "Remington-Sholes"—but no such machines had apparently been manufactured and offered for sale. In the spring of 1894, Mr. Head and Mr. Fay, two large capitalists, became interested, and in May of that year a corporation was organized to manufacture and sell the machines. Of this corporation Franklin and Carter Remington were stockholders. Fay was the chief promoter, and received one-third of the capital stock as compensation for his services in organizing it. The name selected by its promoters for the corporation was "Remington-Sholes Typewriter Company." The new company leased a factory, bought tools, and by December,

1894, its first typewriting machine was placed upon the market. It was labeled "Remington-Sholes." This company continued to make and sell machines under that designation until it became financially embarrassed. Thereupon its stockholders, Remington, Fay, Head, and others, organized a new company, the present defendant "Remington-Sholes Co.," to whom the entire assets of the old company were transferred through Fay, who held them, and conducted the business for a brief interval. The new company devised the name "Rem-Sho" as a trade-mark of its machine, and marks upon the cross-bar of each machine the words "Remington-Sholes Company, Mfrs., Chicago." Manifestly, the situation of the new company relatively to any issues raised here is substantially the same as that of the old company.

The principles of law governing cases of this kind are simple, and easily stated. The only difficulty is their application. The Supreme Court, in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, held that:

"Every one has the absolute right to use his own name honestly in his own business, even though he may incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria. But, although he may thus use his name, he cannot resort to any artifice, or to any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name. Where the name is one which has previously thereto come to indicate the source of manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, in itself amounts to an artifice calculated to produce the deception."

No one may be excluded from taking up whatever business he chooses by the circumstance that some one else of the same name has made a reputation in it; nor may he be required to conduct such business under an alias, although the conducting of it under his own name may produce a confusion in the public mind as to the identity of goods, which no "precaution or indication" of his can effectually prevent. It is through no fault of his that his name happens to be the same as that of some other man who has already impressed his personality on some particular industry. All that is required of him is that he shall use reasonable precautions to prevent confusion; that he shall refrain from any affirmative act which may produce it. Thus doing and thus refraining he may do business under the name that came to him without his choice, and may call his goods by it, if he pleases. This may cause much injury to some one else, and some injury to the public; but no other rule could be adopted without injustice to the innocent individual, who is not responsible for the selection of his name. Unless the individual is to be debarred from one particular business altogether, or compelled to give up the name he inherited, the use of that name by two persons selling the same articles is a necessary evil to which the public must submit.

In the case of a corporation, however, the situation is different. The choice of its name is voluntary. Such name is an artificial thing,

which can be selected by its incorporators from the entire vocabulary of names. In R. W. Rogers Co. v. Wm. Rogers Man. Co., 17 C. C. A. 576, 70 Fed. 1017, this court enunciated the proposition that:

"A body of associates, who organize a corporation for manufacturing and selling a particular product, are not lawfully entitled to employ as their corporate name in that business the name of one of their number, when it appears that such name has been intentionally selected in order to compete with an established concern of the same name, engaged in similar business, and divert the latter's trade to themselves by confusing the identity of the products of both, and leading purchasers to buy those of one for those of the other. * * * The corporators chose the name unnecessarily, and, having done so for the purpose of unfair competition, cannot be permitted to use it to the injury of the complainant."

Other courts have laid down substantially the same doctrine. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; De Long v. De Long Co., 89 Hun, 399, 35 N. Y. Supp. 509; Garrett v. T. H. Garrett & Co., 24 C. C. A. 173, 78 Fed. 472; Le Page Co. v. Russia Cement Co., 2 C. C. A. 555, 51 Fed. 941, 17 L. R. A. 354; Clark Thread Co. v. Armitage (C. C.) 67 Fed. 896; Valentine Meat Juice Co. v. Valentine Extract Co., 17 Patent & Trade Mark Cases, 673. Moreover, the incorporator who elects to transfer his own name for business purposes to an artificial person other than himself is taking an affirmative step in the direction of promoting unnecessary confusion, instead of taking precautions to prevent it.

The corporation defendant and its predecessor, the typewriter company, acquired their names by the selection of the individuals who organized them. Obviously, there was no necessity that either of them should take the name "Remington," either alone or in combination. The junior Remingtons contributed money to the enterprise, and gave—at least one of them did—time and services to its promotion, but they were very far from being the entire corporation. The corporation was a separate entity from them. They chose not to prosecute the typewriter business themselves. Had they done so, good faith toward those dealing with them might make it necessary to use their own name. They chose, on the contrary, to associate themselves with others in a corporation whose name its organizers were free to select. Some suggestion has been made that the machines existed before the incorporation; that they were produced by the Remingtons and Sholes individually at a time when the Remingtons had gone into the typewriting business with Sholes on their own account, and had a right to sell their goods under their own name. The record is very voluminous, and we may have overlooked some item of proof, but a careful examination of it does not sustain this proposition. Prior to the formation of the Remington-Sholes Typewriter Company no machines had been sold or offered for sale. Two or more had been made as models, and the name on them changed from "Z. G. Sholes" to "Remington-Sholes," but the new name had not become associated with the machine except in the talk of the future corporators among themselves. The public knew nothing of any such name in connection with a typewriter; indeed, did not know the junior Remingtons, or even Sholes, as a

producer of typewriters. No necessity, business or otherwise, required the selection of the name "Remington-Sholes" for the corporation. And when it was formed and began for the first time to make and sell machines, it was free to select any name it pleased to designate them. It chose its own name, but its choice was not like the choice of an individual who has inherited a name and applies it to his goods. If the name of the corporation was adopted unnecessarily, and with the expectation that it would produce a confusion through which some trade intended for another might be diverted to itself, it would have no right to offer its goods under that name.

We have no doubt whatever that the name "Remington" was chosen because it was expected that it would naturally lead the public to suppose that the new corporation was either the successor or some branch of the old concern, of which appellant's brief observes, "The name 'Remington' was admittedly a by-word for good workmanship the world over." There are some propositions that do not require direct affirmative testimony, and we do not gain much enlightenment from the long examination of Mr. Sholes as to what were his mental processes when he invented the combination "Remington-Sholes." Counsel for the appellant frankly conceded on the argument that the choice was an "intelligent" one. That is quite sufficient. We have no doubt it was an intelligent choice. Those who selected it well knew that the use of the name "Remington" in connection with a typewriting machine would help to sell it, as the name of "Brown" or "Peterson" would not. They knew, too, that it would be thus helpful because it suggested to the purchaser that it had been made by the Remington concern, whose name was a "by-word for good workmanship the world over." They knew that the presence of that name on the machine would be a constant temptation, often yielded to by whomever sold one to the uninstructed purchaser, to represent that it was the "real" or the "improved" Remington; that the presence of the name made confusion easy; and that the results of any confusion would be entirely in their favor. It was because of that knowledge that the Remingtons' associates, Sholes, the sole inventor of the machine, and Fay, the capitalist whose contributions enabled the new concern to manufacture on a scale large enough to bring it into the field as a competitor, selected the Remingtons' name, not because they were willing to pay some graceful compliment to Franklin Remington for the energy and enthusiasm with which he entered upon his new sphere of activity, or to himself and his brother for the $15,000 they invested in the enterprise.

Under the authorities in this circuit the complainant is entitled to the injunction granted him as to the use of the name "Remington." The arbitrary name "Rem-Sho," however, does not seem to us to be sufficiently like "Remington" to be by itself a reasonable cause of confusion.

The decree, therefore, is reversed, without costs, and cause remanded, with instructions to decree in favor of complainant only as to the name "Remington."

122 F.—23

COXE, Circuit Judge. I concur in the conclusion reached by Judge LACOMBE for the reason that I am unable to distinguish this cause from Rogers v. Rogers, 17 C. C. A. 575, 70 Fed. 1019.

WALLACE, Circuit Judge (dissenting). The only right to use the word "Remington" which the complainant ever acquired from a person of that name was to employ it as a part of the name "Standard Remington Typewriter" in connection with the manufacture and sale of typewriters of the two forms which previous to March, 1886, had been manufactured by E. Remington & Sons. In April, 1888, the complainant registered a trade-mark in the Patent Office consisting of a symbol resembling a seal, red in color, and having in white letters the words "Standard Remington Typewriter." It has also been accustomed to mark its machines with the words "Remington Standard Typewriter."

The defendant (I refer to the party who has assumed the defense of the suit) has been deprived of using its name "Remington-Sholes Company," upon its own typewriters, machines which vary in appearance so much from those sold by the complainant that a mistake in identity is impossible except by persons who suppose that "Remington Standard Typewriter" or "Standard Remington Typewriter" and "Remington-Sholes Company" are the same. Doubtless some careless purchasers have been misled, and some unscrupulous dealers have traded on the resemblance imparted by the word "Remington"; but the defendant is not legally or morally responsible for the deception practiced by others. From the inception of its use of the word it has scrupulously sought to avoid any confusion of identity, and, wishing to sell its machines upon their own merits, has industriously pointed out that it had no connection with the Standard Remington Typewriter in its advertisements, circulars, and letters of instructions to sales agents.

If the defendant had selected its name for the purpose of unfair competition in trade with the complainant, the question whether the collocation of the word "Remington" with the other words did not suffice to distinguish its name from the complainant's name would be of little importance, but there is no evidence that it did this, except the implication created by its selection of the word "Remington"; and if it selected the name from a legitimate motive any such implication is repelled. The facts attending the selection of its name by the defendant in my opinion show quite conclusively that it did so legitimately.

The defendant is the successor in business of a corporation of practically the same name, the "Remington-Sholes Typewriter Company," which was the successor in business of a concern of which the two Remingtons and Sholes were the owners. I agree with the opinion of the court below in the statement that the situation of the new company relatively to any issues raised here is substantially the same as that of the old company, and the inquiry, therefore, is whether the Remington-Sholes Typewriter Company, in adopting its corporate name, did so legitimately. In 1893 the two Remingtons, sons of the former president of E. Remington & Sons, became interested with Sholes in exploiting a typewriter which the latter had invented, patent-

ed, built, and marked with his name as the "Z. G. Sholes Typewriter," the two Remingtons buying a three-fourths interest for about $9,000. Shortly afterwards the name of the machine was changed, and it was marked the "Remington-Sholes Typewriter." Between that time and the spring of 1894 the Remingtons had expended, besides their original purchase money, some six or seven thousand dollars for salaries, shop rent, and other expenses in exploiting the machine; Franklin Remington devoting himself exclusively to the enterprise. In the spring of 1894, in order to interest others, and procure thereby the capital required for manufacturing the machine upon a commercial scale and establishing business agencies, the Remingtons and Sholes concluded to organize a corporation. Accordingly they organized the Remington-Sholes Typewriter Company, the Remingtons and Sholes owning two-thirds of the stock of that corporation and one-third being given to the new associates. The new company at once purchased the necessary tools and machinery, and commenced manufacturing the machines and placing them in the market, and until the summer or fall of 1895 its business was managed entirely by Franklin Remington and Sholes. Undoubtedly, in selecting the corporate name, they understood that it might suggest some association with the great concern at Ilion, and to that extent that the word "Remington" was valuable; but that concern was not engaged in the manufacture of typewriters. It was natural that those who had invented the machine, and given all their time and means in introducing it to the public, when they came to organize the corporation which was to represent the culmination of their hopes and efforts, should choose their own name as the corporate name. In doing so I think they were exercising only the common privilege that every man has to use his own name in his own business, provided it is not chosen as a cover for unfair competition. They did not choose the complainant's name literally, or so closely that those using ordinary discrimination would confuse the identity of the two names, and the differentiation is sufficient to relieve them of any imputation of fraud.

I think the decision should be reversed, with instructions to dismiss the bill.