### VAN HOUTEN et al. v. HOOTON COCOA & CHOCOLATE CO.

(Circuit Court, D. New Jersey. June 10, 1904.)

1. UNFAIR COMPETITION—ADOPTION OF SIMILAR NAME—GROUNDS FOR INJUNCTION.

Complainants' have for many years manufactured in Holland, and for a number of years have widely advertised and sold in the United States, a preparation known as "Van Houten's Cocoa," which has attained a high reputation and large sale. Defendant, the Hooton Cocoa & Chocolate Company, was organized in 1897, and commenced the manufacture and sale of cocoa under the name of "Hooton's"—a man by that name having been a stockholder and the first president, but afterwards severing his connection with the company. There was no imitation of complainants' packages,

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

nor was there any evidence that the name "Hooton's" was adopted for any fraudulent or dishonest purpose; but it was shown that it had a tendency to confuse purchasers, and that, in a number of cases, dealers had been deceived into believing defendant's product to be that of complainants. *Held*, that such liability to confusion and deception was ground for the granting of an injunction restraining defendants from using the name unless accompanied by a clear statement that its cocoa was not that of complainants.

In Equity.   Suit for unfair competition in trade.

Antonio Knauth, for complainants.

John R. Hardin, for defendant.

ARCHBALD, District Judge.[1]   The complainants manufacture at the city of Weesp, Holland, a fine grade of cocoa, which they put out under the name of "Van Houten's Cocoa."   The business was founded by C. J. Van Houten in 1828, and the superior standard of excellence maintained received recognition in 1889 by a grant from the King of Holland entitling the owners to name their establishment "The Royal Cocoa Factory."   About that time it began to be extensively introduced into the United States, and, by advertisement in numerous newspapers and periodicals, as well as on billboards throughout the country, at an expenditure of two or three hundred thousand dollars, a large and valuable trade has been built up, and a good will secured, which is estimated to be worth half a million dollars.   The cocoa is packed in small cylindrical tin cans, holding various quantities—a pound, half pound, quarter pound, and two ounces—and is prominently labeled, "Van Houten's Pure Soluble Cocoa."   The wrapper also displays the complainants' names—C. J. Van Houten and Zoon—the place where the cocoa is manufactured, directions how to use it as a beverage, and certain commendatory notices.   All the lettering is in pale gilt on a white ground.   On the top of the can, in raised letters, the names are again given, with the quantity.

In the fall of 1897 the defendant corporation, the Hooton Cocoa & Chocolate Company, was organized by certain parties employed at the time by the Brewster Cocoa Manufacturing Company, among whom was one Robert T. Hooton, an assistant superintendent or foreman, who was possessed of a number of years of experience as a practical manufacturer of cocoa and chocolate; the others being W. D. Morrison, an office superintendent of the Brewster Company, H. D. Buttel, a salesman, and O. H. Dunning.   William Walter, a chocolate machine manufacturer, was also taken in.   Of these, Hooton was made president, and gave his name to the company, insisting on this as a condition of his going into it.   The business was started January 1, 1898. at Newark, N. J., and Hooton soon afterward assigned to the company certain written formulas or recipes for various kinds of chocolates and cocoas, and the use of his name in connection therewith; receiving in return $5,800 of stock, a part of which he transferred to his associates, so that each should have $3,000; the others putting in cash to this amount, excepting Walter, who furnished machinery.   Hooton continued with the company a year and a half, for six months of which

[1] Specially assigned.

he was president, and the rest of the time superintendent of manufacture, on a salary. The company in the beginning does not seem to have prospered, and in July, 1898, Hooton and Morrison sold out to George W. Dodd, who became president and treasurer, and undertook the financial management. Hooton stayed on with the company for a year for the sake of his services, but is no longer in any way connected with it.

The principal business of the company has been the manufacture of cocoa, which is sold in half-pound and fifth-pound packages, at one-half the prices charged by the complainants. It is put up in square tins, closed with round screw tops, across which, in a scroll, is the word "Hooton's," in raised letters. On two sides of the cans are the words "Hooton's Soluble Breakfast Cocoa," prominently displayed, and in smaller lettering the words, "Dutch process, made by Hooton Cocoa & Chocolate Co., Newark, N. J., U. S. A." On the other two sides are the words, "Hooton's Cocoa," followed on one with directions for using, in English and German, and on the other with commendatory remarks. The coloring on the can is distinct and special. The top and bottom are gilt; the sides, buff; the plain lettering, red; and the display lettering and design work, white or gilt touched off with red. Neither in size, shape, coloring, nor ornamentation is there any imitation of the packages of the complainants. There is nothing, in fact, of which the plaintiffs complain, except the similarity of the two names, "Hooton" and "Van Houten," and the use of the term "Dutch process," which is claimed to be misleading; and not until the bill was served did the defendants have notice that there was any objection to these. The words "Dutch process" are sought to be justified on the ground that they refer, as it is claimed, to a method of manufacturing cocoa and chocolate well known in the trade, in which an alkali is used, and there is some evidence to sustain this contention. Since the filing of the bill, in the summer of 1901, one of the defendant's salesmen took a number of orders for Van Houten cocoa, evidently intending to fill them with his own goods. But the scheme was never carried out, and, when it was brought to the attention of the defendants, he was discharged. Neither in the inception of the defendant company, including the choice of a name, nor in the display of their goods or the conduct of their business, am I able to discover any intent to infringe the rights of the complainants, or to profit by the good will which they have built up. So far as the bill proceeds upon this basis, and seeks an accounting for trade purposely diverted, it cannot, therefore, be sustained.

There is, however, an undoubted similarity in the names by which these two parties put forth their goods, which is calculated to confuse, if not deceive. Perhaps it would not if "Van Houten" was always pronounced as it should be, but the trouble is that it is not. It is correctly pronounced as though the latter part of the name was spelled "Howton," but it is often pronounced, as well as spelled, "Hooten," nor is the prefix "Van" always observed. Several examples of confusion resulting from this appear in the evidence; and the question is whether the defendants, now that their attention has been called to it, should not be willing, or, if not willing, should not be compelled, to so modify the

trade-name which they use that all ground of complaint shall be removed. The complainants were first in the field, by a number of years, and have secured, at large expense, an established reputation and trade, which they have the right to enjoy unimpaired. And while innocent of artifice in the beginning, the refusal of the defendants to grant this concession, and their insistence on the continued employment of that which is shown to be objectionable, and can make no material difference to them on any honest basis, may warrant a somewhat different conclusion as to their present intention, which of itself might call for relief. As suggested in Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 188, 16 Sup. Ct. 1002, 41 L. Ed. 118, the use of the name which they employ, under the showing which has been made, without any precaution to indicate a distinction, might of itself amount to an artifice which equity would restrain. But without stopping to discuss that phase of the question, it is well established that the use of a corporate, if not an individual, name will be enjoined, which, though adopted with perfect innocence, is calculated to confuse and deceive. Ground for such interference is to be found in the detriment to the complainant, which cannot be otherwise remedied or reached. In North Cheshire & Manchester Brewery Co. v. Manchester Brewery Co., L. R. Appeal Cases (1899) 83, a new brewery company introduced into its corporate name that of an old company having an established business in the same locality, and it was held by the House of Lords that the use of it was properly enjoined. "When one comes to see what the real question is," says the Lord Chancellor, "it is in a single sentence: Is this name so nearly resembling the name of another firm as to be liable to deceive?" And again: "In the result, it is perfectly immaterial to my mind whether they [the intentions of the appellants] were fraudulent or not. The question is whether this is an injury to the plaintiff's rights. If it is, * * * it is perfectly immaterial whether they intended it or not. The court must restrain them from that which is injuring another person, however inadvertently they may have done it."

In American Clay Mfg. Co. of Pennsylvania v. American Clay Mfg. Co. of New Jersey, 198 Pa. 189, 47 Atl. 936, the plaintiff was a Pennsylvania corporation, and the defendant a corporation of New Jersey authorized to do business in Pennsylvania. Both were engaged in the same line of trade at Pittsburg, and the result was a confusion in correspondence and in the drawing and honoring of checks and drafts; and the defendants were enjoined. "There are two classes of cases," says Mitchell, J., "involving judicial interference with the use of names: First, where the intent is to get an unfair and fraudulent share of another's business; and, second, where the effect of defendant's action, irrespective of his intent, is to produce confusion in the public mind, and consequent loss to the complainant. In both cases the courts of equity administer equitable relief." In Charles S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769, the defendant company was organized by Charles S. Higgins, who had been previously interested in and connected with the complainant company, which he had also helped to organize. Both were engaged in the manufacture of soap, in which the complainants

and their predecessors had built up an extended trade, their products being commonly known as "Higgins Soap"; and it was held that they were entitled to an injunction restraining the use by the defendants of the word "Higgins" in their business, as tending to produce confusion and a diversion of trade. Similar rulings are to be found in a bead-roll of cases, among which may be mentioned Holmes Booth & Haydens v. Holmes Booth & Atwood Mfg. Co., 37 Conn. 278, 9 Am. Rep. 324; Cement Co. v. Le Page, 147 Mass. 206, 17 N. E. 304, 9 Am. St. Rep. 685; Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 Fed. 94; Clark Thread Co. v. Armitage (C. C.) 67 Fed. 896; R. W. Rogers Co. v. William Rogers Mfg. Co., 70 Fed. 1017, 17 C. C. A. 576; Walter Baker & Co. v. Sanders, 80 Fed. 889, 26 C. C. A. 220; Wycoff, Seamans & Benedict v. Howe Scale Co., 122 Fed. 349, 58 C. C. A. 510. That a case is presented on the proofs, within the equitable principle announced and enforced in these decisions, I am convinced. As already pointed out, the two names "Hooton" and "Van Houten" are not readily distinguished; and, while the correct pronunciation may somewhat differentiate them to the ear, and the spelling, also, in a measure, to the eye, neither is known to a certainty by the public, and that is what must guide. As said by Lord Halsbury in North Cheshire & Manchester Brewery Co. v. Manchester Brewery Co., supra, "When you are dealing with the question of the public's being deceived, that negatives the idea of their having certain knowledge, or else they could not be." But without resting the case on probabilities, there are examples of actual confusion to be found in this record which are sufficiently significant. The deception which the defendants' salesman was able to perpetrate, to which allusion has been made, is a forcible one. In that case, orders for Van Houten's cocoa were taken on defendants' order slips, although the name "Hooton" was on each of them, in plain sight, at the top. That this was without fault on the part of the defendants does not alter the force of the circumstance, nor the fact that the orders were never filled. With George W. Crary, a grocer of Albany, N. Y., the same salesman effected the exchange of Van Houten's cocoa, which Mr. Crary had on hand, for Hooton cocoa, which he received and sold as though it was the same, and did not ascertain that it was different until he was informed by complainants' agent a few weeks before his testimony was taken. C. L. Rayner testifies that a week or two after an exhibition or demonstration, as it is called, had been given at Houghton & Dutton's department store, in Boston, of complainants' cocoa, another similar demonstration was given of the Hooton goods, in the course of which one lady customer was heard to observe to another that that was the cocoa which she had heard so much about, but which she was surprised, on pricing, to find cost about half what she thought; thus evidently confusing the higher-priced Van Houten cocoa of the previous demonstration with the Hooton cocoa which was then being displayed. The same witness gives examples of merchants whom he approached for the purpose of selling complainants' goods, but who stated that they already had a supply on hand, producing the Hooton cocoa in proof. Since this case began, A. H. Williams & Co., wholesale druggists of Utica, N. Y., wrote to the complainants—addressing them as Van Houten & Zoon—stating that they·

had had considerable trouble with their cocoa, and that customers who had used it in soda fountains had returned it to them after trial; but it turned out that the goods which they had were the defendants' and not the plaintiffs' at all. In addition to this, several misspelled and misdirected letters have been produced, some of which, intended for the plaintiffs, would have gone to the defendants, except as they were redirected by the post-office authorities; and others just the reverse. All this unmistakably goes to show the liability to confusion in the public mind growing out of the use of these two names applied to the same article in the same trade, which, now that their attention is called to it, the defendants, in conscience, ought to be willing to correct, if they desire, as they profess, to have nothing but their own, the best proof of which will be the removal of the cause. Mr. Hooton is no longer associated with them, and while they have the undoubted right, so far as he is concerned, to use his name, except in corporate matters, there is no purpose to be served by doing so. It either should be dropped entirely, or there should be something to clearly distinguish it from that of the complainants. It may be that it would be sufficient if, as has been suggested, they should designate their goods as "R. T. Hooton's Cocoa," which somewhat varies it to both ear and eye. It would be in the same line, also, to omit the words "Dutch process," which, if they mean anything to the manufacturing trade, certainly do not to the general public, and aid in the possible confusion. But the court cannot say what shall, so much as what shall not, be done, the limit of which would seem to be that, as already indicated, they shall not use the word "Hooton" to designate their cocoa, except as they clearly and unmistakably state in the same connection that such cocoa is not the Van Houten cocoa manufactured by the complainants, Van Houten & Zoon. Singer Manufacturing Co. v. June Mfg. Co., 163 U. S. 169, 204, 16 Sup. Ct. 1002, 41 L. Ed. 118; Tarrant & Co. v. Hoff, 76 Fed. 959, 22 C. C. A. 644; Royal Baking Powder Co. v. Royal (C. C. A.) 122 Fed. 337, 348. This relief being based on what has been developed by the bill, rather than by that which had preceded it, there will be no costs.

Let a decree to that effect be drawn.