HENRY W. FISHEL & SONS, INC., Respondent, *v.* DISTINCTIVE JEWELRY CO., INC., and Others, Appellants.

First Department, May 27, 1921.

Unfair competition — suit to enjoin — use of name " Silverine " is wrongful as against trade mark name " Silverite "— use of words " Distinctive Jewelry " in corporate name restrained as confusing with " Jewelry of Distinction "— referee not appointed where damages not shown.

In a suit to enjoin unfair competition it appeared that the plaintiff, a jewelry manufacturer selling to the retail trade, had adopted the words " Jewelry of Distinction " as descriptive of its products and the word " Silverite " as a trade mark descriptive of the metal of which its products were made; that it had used said descriptive phrases extensively for a number of years in its advertising and on its stationery; that the defendant corporation

was organized by former employees of the plaintiff; that the organizers of the defendant had procured the manufacture of certain jig saws from patterns belonging to the plaintiff and had adopted certain designs made by plaintiff's employees; that in its corporate title it used the words "Distinctive Jewelry" and had made use of the word "Silverine" or "Silverin" in the advertising and sale of its products through the wholesale trade, but it did not appear that any purchaser was deceived by the acts of the defendants or purchased jewelry of defendant company's manufacture in the belief that it was the plaintiff's manufacture or that any confusion between the business of the plaintiff and of the defendant company had arisen from the acts of the defendants.

*Held*, on all the evidence, that the phrase "Jewelry of Distinction" as used by the plaintiff had acquired in the trade a secondary meaning as indicating the imitation jewelry manufactured and sold by the plaintiff; that the trade name and trade mark "Silverite" was coined or adopted by the plaintiff to identify the imitation jewelry manufactured by it; that the corporate name of the defendant company was selected and the words and phrases used by it were adopted and used in bad faith in the hope that thereby the defendant company would obtain some undue benefit and advantage from the advertisement by the plaintiff of its imitation jewelry, and that such use by the defendant of the corporate name and said words and phrases were calculated and intended to deceive the public into buying defendant company's jewelry in the belief that it was manufactured by the plaintiff.

The use by a party of a corporate name or of fanciful or descriptive phrases or words under which goods manufactured and advertised by another have become known in the trade and which use is intended and calculated to result in unfair competition, even though the corporate name, phrases or words are not such that one party may obtain an exclusive right to the use thereof as a trade name or trade mark, may be enjoined on the theory that the name, phrases or words have thus acquired in the trade a secondary meaning as identifying the business or goods of the party first using them.

Though there was no evidence that the plaintiff's goods were called for or sold under the name, phrases or words enjoined, and that the designs and prices were the controlling factors in the sale, it is a reasonable inference from the manner in which the plaintiff's goods were advertised and the attention of customers was drawn thereto by signs in the retail stores, that its goods must have become known to some extent at least by the names, phrases and words under which they were advertised.

The fact that the defendant company sells only to the wholesale trade, namely, to jobbers and department stores, while the plaintiff sells to the retail trade, does not prevent the acts of the defendant from amounting to unfair competition.

Inasmuch as there is no evidence that the plaintiff sustained any damage from the acts of the defendants or that the defendants derived any profits from their acts adjudged to be unfair competition, there is no basis for the appointment of a referee.

APPEAL by the defendants, Distinctive Jewelry Co., Inc., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of March, 1921, upon the decision of the court rendered after a trial at the New York Special Term.

*I. Maurice Wormser [William Macy* of counsel; *Samuel W. Solins,* attorney], for the appellants.

*Harry D. Nims [Henry D. Williams* of counsel; *Williams & Pritchard,* attorneys], for the respondent.

LAUGHLIN, J.:

This is a suit in equity to enjoin unfair competition. The plaintiff alleged that it was a jewelry manufacturer and had adopted the words " Jewelry of Distinction " as descriptive of its products and the word " Silverite " as a trade mark descriptive of the metal of which its products were made, and that these terms had become known to the public as identifying its goods; that the defendants Ornstein and Schwartz were formerly in its employ and left its employ and incorporated the defendant company, adopting for it a name in imitation of the name used by the plaintiff to describe its products, and were using the word " Silverine " as descriptive of their goods in imitation of the plaintiff's trade mark; that the defendants by misrepresentations and unfair inducements caused various employees of the plaintiff who would not otherwise have left its employ, to leave and enter the employ of the defendant company, and by fraudulent and unfair means have obtained possession of and have used designs of jewelry and plans and patterns of tools belonging to the plaintiff. The answer contains a denial of the material allegations of the complaint and pleads as an affirmative defense that the plaintiff had no exclusive right to adopt the words " Jewelry of Distinction " and " Silverite," and that " Silverite " could not lawfully become a trade mark.

Plaintiff presented evidence showing that it was incorporated in 1919 as successor to a corporation formed in 1911, and was one of the three largest houses of the kind in New York city, and was engaged in manufacturing from its own designs

and with tools designed by and for it imitation diamonds and rhinestones set in an alloy the trade mark of which is " Silverite," resembling platinum in imitation of designs of genuine diamonds and rhinestones set in platinum and selling the same at reasonable wholesale prices to the retail trade; that defendant Ornstein was in the employ of the plaintiff and its predecessor about six years and left in May, 1919, and during the last year of his employment was foreman of the jewelers; that defendant company was incorporated about ten days before Ornstein left plaintiff's employ; that defendant Schwartz was in the employ of plaintiff and its precedessors about seven years as a stone setter and left March 15, 1919; that defendant company applied to the Federal Patent Office for a trade mark on the word " Silverin " on April 6, 1920, and after objections thereto by the plaintiff the application was denied by default; that the defendant company used the term " Silverin " by stamping on all its jewelry until the 18th of November, 1919, since which time it has used " Silverine; " that the plaintiff and its predecessor used the word " Silverite " by stamping it on its jewelry since 1913, and obtained a trade mark thereon on the 8th of April, 1915; that since 1916 the plaintiff has used " Jewelry of Distinction " on all its stationery and advertising and that this use and advertising extended to cards, letterheads, billheads, booklets, showcases, pads, photographs, signs, moving picture films and other forms of advertising with these words in most instances, but not in all, preceded by the word " Fishson " to represent its corporate name, printed thereon; and that its goods were advertised 2,786,000 times, including 1,238,000 newspaper advertisements and 1,435,000 national magazine advertisements, and also were advertised in trade papers reaching the jewelry trade throughout the country for three and one-half years from May, 1916; that there has been no other use thereof or of the word " Silverite," save as made by the defendant company; that plaintiff advertised its jewelry to some extent as " original creations of distinctive designs made in Silverin, a metal having the appearance and color of platinum," and that " Jewelry of Distinction " came to have " a very definite trade name " and described what plaintiff " had in mind when " it made the jewelry; that " Jewelry of Distinction " was

adopted by plaintiff as an appropriate phrase to cover the type of jewelry it made and sold; that in February or March before the defendant Ornstein left plaintiff's employ he requested the foreman of the plaintiff's die and tool department to leave its employ and go into business with him, and also requested the foreman to make for him a machine known as a jig saw, which had been invented and made for and several of which were in use by the plaintiff, and which constituted an improvement on tools for like purposes theretofore in use in the trade, and while in plaintiff's employ, having been introduced by plaintiff's foreman to the manufacturer, he induced him to make two jig saws from patterns belonging to the plaintiff, and defendant company is using them; that Ornstein also requested plaintiff's designer to make designs for him before he left the employ, and that Ornstein learned this line of business while in plaintiff's employ; that the plaintiff sold to the retail trade and to people who were able to pay their bills; that the defendant company employed a stone setter who had been in the employ of the plaintiff and left on strike, and employed other men who had formerly been in the employ of the plaintiff; that both before and after leaving plaintiff's employ Ornstein requested many of plaintiff's employees to leave and go with him, and long before leaving requested plaintiff's designer to make up designs of jewelry for him; and that after the defendant company commenced business the defendants Ornstein and Schwartz stated to a former employee of the plaintiff, who was then in the employ of the defendant company, that they were trying their best to ruin plaintiff and to put it out of business. The plaintiff also presented evidence tending to show that its billheads, letterheads and order blanks were imitated by the defendant company, and that it made and leased to the trade display signs for windows and glass signs to advertise the fact that " Jewelry of Distinction " was on sale, and distributed to the retail trade quite extensive leaflets so advertising its goods and photographs of actresses and other well-known women wearing " Jewelry of Distinction."

Defendant Ornstein testified that the heads of plaintiff's departments knew plaintiff's designs and tools, and that the plaintiff usually obtained its designs from trade papers

adapting them to its own use and that these designs were also used by others; that he left the plaintiff's employ on the 19th of May, 1919, and that the defendant company was incorporated about two weeks before that. Defendant at the time of the trial was using neither " Silverine " nor " Silverin," and discontinued the use thereof on discovering that other firms were using them; that when he left plaintiff's employ, plaintiff's vice-president said to him that he would put him out of business; that the composition used by defendant is an imitation of silver and it has never held it out as an imitation of platinum, which plaintiff claims to imitate; that the defendant at the time of the trial might have had on hand from $10,000 to $15,000 worth of stock marked " Silverine " or " Silverin," which it was still selling, but the amount on hand might not exceed $5,000. He denied that he ever before leaving plaintiff's employ requested any of plaintiff's employees to leave with him, but admitted that he had hired several of them since, while they were on strike and at other times when they came to him for employment. He admitted that he knew the plaintiff used the words " Jewelry of Distinction " and said that it was unfortunate that his company had adopted the same name, but it submitted a list of three or four names to the Secretary of State and this was one of them, and the one they particularly wanted and applied for first was " Premier," which was not available. He also testified that the reason defendant company used " Silverine " and " Silverin " was because the jewelry was an imitation of silver and that there was no intent on the part of those who organized the defendant corporation or were managing it to deceive the trade by the adoption of this corporate name or these names for its jewelry, and that they did not realize it would create confusion in the trade. He also testified that the defendant company dealt in the same line of goods as plaintiff, but sold only to the wholesale trade, to department stores and to jobbers, and that its salesmen go on the road with samples and usually get orders according to the samples and prices, and that the prices were the principal factor in making sales; that the composition used by the defendant company is supposed to be an imitation of silver and he was not sure whether it ever held it out as an imitation of platinum; that the designs for the most part are

taken from trade journals and are modified by each house to suit its own ideas; that the designs are not patented and there is nothing exclusive about them.   None of the other defendants testified.   Two of the former employees of the plaintiff testified that after leaving plaintiff's employ on strike, their union procured their employment by the defendant company.   A jeweler called by the defendants testified that he had handled both plaintiff's and defendants' lines of jewelry and that his customers never asked for it either by the name of " Silverite " or " Silverin."   It was not denied that the defendant company procured the manufacture for it of the two jig saw piercing machines.   The manufacturer was not called, but it was stipulated that if called he would have testified that he also made the machines " for somebody else," but the time of the manufacture thereof was not shown.

There was no evidence that any purchaser was deceived by the acts of the defendants or purchased jewelry of defendant company's manufacture in the belief that it was of the plaintiff's manufacture, or that any confusion between the business of the plaintiff and of the defendant company has arisen from the acts of the defendants.   On these facts and on this evidence the trial court found, among other things, that the plaintiff duly registered " Silverite " as a trade mark and is the lawful owner and entitled to the exclusive use thereof; and that the use by the defendant company of " Silverine," " Silverin." " Distinctive Silverine " or " Distinctive Silverin " in competition with plaintiff is unfair competition and is calculated to mislead the public as to the identity of the goods and of their manufacturer; that the use by the defendant company of its corporate name in this line of business is also calculated to mislead the public as to the identity of the goods and of their manufacturer and constitutes unfair competition; that the phrase " Jewelry of Distinction " has become valuable to the plaintiff as indicating and identifying its goods; that a large part of plaintiff's imitation jewelry is made up from designs originated by it for its exclusive use, and the defendant company has copied many of them in making up its goods; that the jig saw piercing machine designed and manufactured for and used by the plaintiff, two of which the defendant procured

to be manufactured for it, is of great value to the plaintiff; and that the acts of defendants show that they intend to deceive and confuse the public to the injury of the plaintiff. The conclusions of law are to the effect that the corporate name of defendant company is so similar to the phrase " Jewelry of Distinction," by which the plaintiff's goods are identified, that confusion and deception are liable to result from its use in this line of business, and that its use is wrongful as against the plaintiff; that plaintiff's trade mark, " Silverite," is valid, and that the use by the defendant company of " Silverine," " Silverin," " Distinctive Silverine," and " Distinctive Silverin " on its goods is wrongful as against the plaintiff; that the various designs used by the defendants are so similar to the plaintiff's designs as to constitute unfair competition; that the means by which the defendant company sought to copy the plaintiff's designs in connection with the other acts of the defendants were unfair, and that the defendant's use of order blanks, tags, labels and billheads specified in the complaint constitutes unfair competition; that as against the defendants the plaintiff is the owner of and entitled to the exclusive use of the patterns for which the iron jig saw piercing machines are made; that plaintiff is entitled to an injunction enjoining the defendant company and its agents, servants and employees from making any use whatsoever of its present corporate name in connection with the manufacture or sale of jewelry, and likewise enjoining the use of the names, " Silverine," " Silverin," " Distinctive Silverine " or " Distinctive Silverin," or any other name that is a colorable imitation of the plaintiff's registered trade mark, and enjoining the use of the order blanks, tags, labels and billheads, specified in the complaint, and enjoining the use of any designs, patterns, tools or machines, knowledge or possession of which was unfairly or fraudulently obtained from the plaintiff, and particularly the saw piercing machines; that plaintiff is entitled to recover of the defendants the damages sustained by it from such unlawful acts of the defendants, including all profits received by the defendants by reason of said acts, together with its costs and disbursements, and to the appointment of a referee to ascertain and assess such profits and damages if the plaintiff shall be so advised, and

entry of judgment in accordance with the decision is directed. The judgment enjoins the defendant company, its officers, directors, agents, servants, attorneys and employees and all persons acting for it from any use whatsoever of its corporate name or any phrase colorably similar to the phrase, "Jewelry of Distinction," in connection with the manufacture or sale of jewelry, and from the use in connection with such manufacture or sale of jewelry, of the names "Silverine," "Silverin," "Distinctive Silverine" or "Distinctive Silverin" or any name that is a colorable imitation of the plaintiff's registered trade mark, and from the use of the order blanks, labels and billheads specified in the complaint, and from any use of designs, patterns, tools or machines, knowledge or possession of which was unfairly or fraudulently obtained from the plaintiff and from any use of the jig saw piercing machine; and it further adjudged that the plaintiff recover its damages including all profits received by defendants from said unlawful acts, and a referee was appointed to ascertain and report said damages and profits, and for the costs of the action as taxed, and that plaintiff have leave to apply at the foot of the judgment for other and further relief.

There is no evidence that the plaintiff has sustained any damages from the acts of the defendants or that the defendants have derived any profits from their acts adjudged to be unjust competition; there was, therefore, no basis for the appointment of a referee and those provisions of the conclusions of law and of the judgment must be stricken out.

It is contended in behalf of the appellants that their corporate name being wholly dissimilar from that of the plaintiff is lawful and that the use thereof cannot be enjoined; that the words "Jewelry of Distinction" and the other words and phrases the use of which has been enjoined are words in common use to the use of which every one is entitled and with respect to which none may acquire an exclusive right, and that it has not been shown that they have acquired a secondary meaning as identifying the plaintiff's business or goods, and that, therefore, the plaintiff is not entitled to an injunction against their use by the defendants. In so far as the judgment is against the individual defendants in their individual capacities there appears to be no evidence warranting it with

respect to one or two of them; but the appeal was taken by the defendants jointly and no distinction was made upon the argument or in the points between the plaintiff's rights as against the corporation and against the individual defendants.

We think it may fairly be inferred from the evidence that the phrase "Jewelry of Distinction" has acquired in the trade a secondary meaning as indicating the imitation jewelry manufactured and sold by the plaintiff, and that the trade name and trade mark "Silverite" was coined or adopted by the plaintiff to identify the imitation jewelry manufactured by it, and that the corporate name of the defendant company was selected and the words and phrases used by it, the use of which has been enjoined, were adopted and used in bad faith in the hope and expectation that thereby the defendant company would obtain some undue benefit and advantage from the extensive advertisement at great expense by the plaintiff of its imitation jewelry as hereinbefore stated, and that such use by the defendant company of the corporate name selected by it and of the said phrases and words adopted by it were calculated and intended to deceive the public into buying the defendant company's imitation jewelry in the belief that it was manufactured by the plaintiff, and that unless enjoined, such use by the defendant company of its corporate name and of said words and phrases would have that effect. In such cases it is well settled that the use by a party of a corporate name or of fanciful or descriptive phrases or words under which goods manufactured and advertised by another have become known in the trade and which use is intended and calculated to result in unfair competition, even though the corporate name, phrases or words are not such that one party may obtain an exclusive right to the use thereof as a trade name or trade mark, may be enjoined on the theory that the name, phrases or words have thus acquired in the trade a secondary meaning as identifying the business or goods of the party first using them. (*Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462; *T. A. Vulcan* v. *Myers*, 139 id. 367; *DeLong* v. *DeLong Hook & Eye Co.*, 89 Hun, 399; *Oneida Community, Ltd.*, v. *Oneida Game Trap Co., Inc.*, 168 App. Div. 769; *Kayser & Co.* v. *Italian Silk Underwear Co.*, 160

id. 607; *German-American Button Co.* v. *Heymsfeld, Inc.*, 170 id. 416; *Fischer* v. *Blank*, 138 N. Y. 244; *New England Awl Co.* v. *Marlborough Awl Co.*, 168 Mass. 156; *Shaver* v. *Heller & Mers*, 108 id. 821; *Lalance & Grosjean Mfg. Co.* v. *National Enameling & Stamping Co.*, 109 id. 317; *Saxlehner* v. *Siegel-Cooper Co.*, 179 U. S. 42; *Elgin Nat. Watch Co.* v. *Illinois Watch Co.*, Id. 665; *French Republic* v. *Saratoga Vichy Co.*, 191 id. 435; *Florence Mfg. Co.* v. *Dowd & Co.*, 178 Fed. Rep. 73; *G. & C. Merriam Co.* v. *Saalfield*, 198 id. 369; *Allen* v. *Walker & Gibson*, 235 id. 230; *Keasbey* v. *Brooklyn Chemical Works*, 142 N. Y. 467; *Samuels* v. *Spitzer*, 177 Mass. 226; *Fuller* v. *Huff*, 104 Fed. Rep. 141; *National Cloak & Suit Co.* v. *Londy & Friend*, 211 id. 760; *Hartzler* v. *Goshen, etc., Ladder Co.*, 55 Ind. App. 455; *Bickmore Gall Cure Co.* v. *Karns*, 134 Fed. Rep. 833; *Wirtz* v. *Eagle Bottling Co.*, 50 N. J. Eq. 164; *Standard Paint Co.* v. *Rubberoid Roofing Co.*, 224 Fed. Rep. 695.)

The learned counsel for the appellants contends that the plaintiff never advertised its goods as " Jewelry of Distinction " alone, and that that phrase was always preceded by the word " Fishson," in larger type; but in that he is in error, for there is evidence that the plaintiff's goods were so advertised without the phrase being preceded by " Fishson." It is also contended that there is no evidence that the plaintiff's goods were called for or sold under the names, phrases and words enjoined, and that the designs and prices were the controlling factors in the sales; but it is a reasonable inference from the manner in which the plaintiff's goods were advertised and in which the attention of customers was drawn thereto by signs in the retail stores that its goods must have become known to some extent at least by the names, phrases and words under which they were advertised. It is also argued that there could not be unfair competition or confusion for the reason that the plaintiff sells to the retail trade and the defendant company sells only to the wholesale trade, namely, to jobbers and department stores, but the conclusion claimed does not follow, for the goods of the defendant company must ultimately reach and be sold in the retail trade.

The injunction in so far as it relates to the corporate name of the defendant company only enjoins the use of the corporate

name in connection with the manufacture or sale of jewelry. It is not suggested that the defendant company could continue the use of its corporate name in this line of business and that unfair competition with the plaintiff could be avoided by requiring in connection with the use of the corporate name a prefix or suffix which would show that it had no relation to the plaintiff or its business, and, therefore, there is no occasion for modifying the judgment in that regard.

It follows that the conclusions of law and judgment should be modified by eliminating therefrom the provisions for the recovery of damages and profits received by the defendants, and as modified affirmed, without costs.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Order modified as directed in opinion, and as so modified affirmed, without costs. Settle order on notice.