## Brody et al. v. Cohen et al.

*I. Ostroff*, for complainants.
*N. Teitelman*, for respondents.

SLOANE, J., July 31, 1947.—Plaintiffs aver as follows:

They registered the name "Boytog" as a fictitious name, under the act,[1] on April 11, 1945, and since that time have been dealing in boys' clothing of all types, at wholesale and retail, at 704 South Street, Philadelphia. They have used the name on their letterheads, vouchers, price lists, and in all their advertising matter; they have spent large sums of money in advertising and building up their business carried on under that name. The trade name has thereby become known in the Philadelphia area and has acquired a secondary meaning identifying plaintiffs' business and merchandise.

In December 1946 defendants registered the fictitious name "B. C. Boys Togs", also known as "BEE CEE Boys Togs", and have since that time conducted a business under that designation, at 2211 South 7th Street, Philadelphia, dealing in boys' clothing and apparel. By reason of the great similarity of defendants' trade name to that of plaintiffs, and its use by defendants in conducting their business, including use on letterheads, price lists, advertising, etc., and in telephone and directory listings, the public will be confused as to which business it is dealing with. Defendants' use of their trade name is with intent to injure and defraud plaintiffs in their business by diverting to defendants customers, business and trade which would otherwise go to plaintiffs; it already has had and will continue to have that effect.

Plaintiffs have protested to defendants and requested that they desist from using the trade name

---

[1] Fictitious Names Act of June 28, 1917, P. L. 645, 54 PS §21, et seq., as amended (repealed by the Fictitious Names Act of May 24, 1945, P. L. 967, 54 PS §28.1 et seq., which act set up somewhat different requirements for registration of an assumed or fictitious name).

under which they have been doing business, but defendants have refused.

Plaintiffs pray that an injunction issue to restrain defendants, their employes, agents or assigns from using the trade names "B. C. Boys Togs" or "BEE CEE Boys Togs", or any other name deceptively similar to plaintiffs' trade name "Boytogs", in their business, advertising, listings, or in any other manner whatsoever.

### Answer

Defendants admit that plaintiffs registered the fictitious name "Boytogs" on April 11, 1945, but deny that plaintiffs expended large sums in advertising and establishing the business under that name. They aver the trade name has no value as such, that plaintiffs' trade derives largely from having a place of business where the public passes by, and not from use of the name.

Defendants admit they registered the fictitious name "BEE CEE Boys Togs" in December 1946, and that since then they have conducted a business in boys' clothing under that name at 2217 South 7th Street, Philadelphia. They deny having ever registered or used "B. C. Boys Togs".

Defendants aver that in the use of the name "BEE CEE Boys Togs" the "BEE CEE" is always displayed in letters as large and usually larger than "Boys Togs". On their window sign the words "BEE CEE" are in letters eight inches high in rose-colored neon, and "Boys Togs" in letters two and one-half inches high in green neon. Defendants deny that the public has been or will be confused by the similarity in names. They aver that they adopted the name "as being peculiarly descriptive of them and as distinctively different from any other name", in that the "BEE CEE" is formed from the first initials of defendants' last names, and the words "Boys Togs" are descriptive

terms meaning clothing for boys. Defendants claim that "Boys Togs" consisting as it does of two ordinary English words which describe the articles sold by them, cannot be appropriated by plaintiffs to represent their business solely, so as to deny to defendants the use of these words.

Defendants deny any intent to injure plaintiffs or to appropriate their business, or to deceive the public into purchasing their merchandise as that of plaintiffs. They aver that the stores are approximately 17 blocks apart, in different neighborhood shopping districts; that the style and lettering of their name on their window, merchandise, bills and wrappers is distinctive and in no way deceptively similar to plaintiffs' name.

Defendants therefore ask that the bill be dismissed.

## Findings of fact

1. Plaintiff, Herman Brody and Jerry J. Goldberg, registered the name "Boytogs" in Philadelphia County and with the Secretary of the Commonwealth on April 11, 1945, as an assumed or fictitious name.

2. Since August 1945 plaintiffs have been and still are using that name in their business of selling at retail everything that boys, from the ages of three to 16, wear—underwear, socks, gloves, hats, shirts, suits, everything except shoes—at their only place of business, 704 South Street, Philadelphia.

3. On December 28, 1946, defendants, Simon W. Cohen and Lenore Becker, registered the assumed or fictitious name "BEE CEE Boys Togs" in Philadelphia County and with the Secretary of the Commonwealth, and since then have been operating a business quite similar to that of plaintiffs—selling at retail everything that a boy wears, from the age of two to 12.

4. Plaintiffs have spent about $5,000 per year to advertise their business in newspapers and by circulars through the mail.

5. Plaintiffs' trade name "Boytogs" is made up of two words, one of common use in the English language, "boy", and both words of a descriptive nature, together meaning "boys' clothes".

6. Defendants, in their trade name "BEE CEE Boys Togs" likewise use the same two descriptive words in their usual meaning. The words "BEE" and "CEE" are taken from the initials of the surnames of the partners, respectively.

7. Defendants' use of their trade name is similar to plaintiffs' use of theirs even though "BEE CEE" is used beforehand and even though "BEE CEE" appears in larger and more prominent lettering on their window and their wrappings.

8. Plaintiffs' store is about 17 blocks distant from that of defendants, but plaintiffs draw business from over the city as do defendants (though less than plaintiffs), and thus there is overlapping in territory served.

9. Defendants have not attempted to represent their store as a branch of or in any way connected with that of plaintiffs, nor have defendants tried to 'palm off' their merchandise as that of plaintiffs.

10. Plaintiffs did not produce evidence sufficient to show that they have, or are likely to lose business to defendants by reason of any confusing similarity of defendants' trade name to theirs.

11. Plaintiffs' trade name has not acquired a secondary significance to the public, that is, a name referring particularly to their business and merchandise.

## Discussion

Plaintiffs' complaint is defendants' use of the word "Togs"[2] in their trade name. Plaintiffs do not care nor complain about the use of "BEE CEE". And the

---

[2] Togs, n. pl. of tog. Clothes. See Tog, n. 2. And under tog, n. 2. pl. Clothes, esp. a set of clothes and accessories for a specified use; as, riding or golf togs. *Colloq.* Definitions in Webster's New International Dictionary (2nd ed., 1938).

use of the word "Boys" by itself cannot be limited by plaintiffs; it is an ordinary, descriptive word "drawn from common speech" which does not identify anybody's merchandise in particular. Plaintiffs can have "no copyright on the dictionary or any part of it": American Waltham Watch Co. v. U. S. Watch Co., 173 Mass. 85, 87.

As used together in defendants' trade name "Boys Togs" [3] are words of English, properly applicable to the subject matter of their sales; use of these words by defendants can be restrained at the instance of plaintiffs only if the latter in their use of the variant coined by them, "Boytogs", have given these words a "secondary meaning", a meaning applicable peculiarly to their goods and services in the mind of the buying public. And if these plaintiffs are otherwise entitled to relief, the slight difference in the use of the terms would not excuse the appropriation by defendants. "Minor differences are supposed to help over hard places", but they do not: Stamford Foundry Co. v. Thatcher Furnace Co., 200 F. 324. ("Shipmate" and "Messmate".) The use of "BEE CEE" before "Boys Togs" does not help defendants if an attachment has grown in the public mind between plaintiffs' goods and plaintiffs' trade name.[4] See p. 1008 and footnote 67

---

[3] The absence of the possessive punctuation mark after the word "Boys" in defendants' trade name is of no significance in the consideration of the alleged wrongful use of the trade name.

[4] The doctrine of secondary meaning stems largely from the "Camel Hair" case, the famous English case of Reddaway v. Banham [1896] A.C. 199, where it was held that the second user cannot justify himself by showing that he is merely truthfully describing his product. ("Camel Hair Belting.") See generally, The Law of Trademarks, Tradenames and Unfair Competition, Hopkins (4th ed., 1924); The Law of Unfair Competition and Trade-Marks, Nims (2nd ed., 1929); Trade-Mark Protection and Unfair Trading, Derenberg, p. 347 et seq.; Handler and Pickett, "Trade-Marks and Trade Names", 30 Columbia Law R. 168, 181 et seq.; Restatement, Torts, §715 et seq.; and exhaustive annotations in 148 A. L. R. 12 and 150 A. L. R. 1067.

of Vol. 2, Callman, Unfair Competition and Trade-Marks; American Waltham Watch Co. v. U. S. Watch Co., 173 Mass. 85, 86, 87. See A. L. I. Restatement of Torts, §716(*b*), and comment thereon, where it is said:

". . . The issue in each case is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association. Long continued use of the designation is evidence from which this 'secondary meaning' may properly be inferred; but this inference is rebuttable."

Generally speaking, descriptive or geographical terms cannot be exclusively appropriated by anyone: Quaker State Oil Ref. Co. v. Steinberg et al., 325 Pa. 273 ("Quaker State" and "Quaker City"), for "to permit the exclusive appropriation of such a term would prevent others from properly describing their product and hence a monopoly would result" (p. 277). For a plaintiff to acquire the exclusive right to the use of such a term it must be shown that it has acquired a "secondary meaning" so that it has come to be taken to refer to plaintiff's wares in the minds of the purchasing public. For example, in Hartman v. Cohn et al., 350 Pa. 41, plaintiff, who had used the geographical term "Dundee" in connection with his made-to-measure clothing business in Reading for 26 years was held entitled to an injunction to keep another concern from opening up a ready-made clothing business in Reading using the word "Dundee" in its trade name, though the latter company had been in business for many years in other parts of the country using that name. It was held that the likelihood of confusion among buyers, in mail and package deliveries, and that defendants might possibly gain the credit of the repu-

tation of the established custom-tailor business of plaintiff entitled the latter to an injunction against use of the name.

The recent case of Thomson-Porcelite Co. v. Harad et al., 356 Pa. 121, involved a somewhat different situation. Plaintiff, maker of an enamel paint product under the trade name "Porcelite" since 1892, was held entitled to an injunction against defendants' using the name "Porcelene" on its similar product. It was held that the evidence sustained the chancellor's finding that the similarity was likely to deceive purchasers. But the terms involved are not geographical nor altogether descriptive, although there is a suggestion of the word "porcelain" in both of them. In the instant case the words used by defendants, "Boys Togs", are fully descriptive, and what is important, descriptive of defendants' business, so that the Thomson-Porcelite case is not applicable. A different situation is also involved where the name is descriptive generally, but not descriptive of the business in question. See, for example, Stork Restaurant, Inc., v. Marcus et al., 36 F. Supp. 90, where the word "Stork" was used in connection with a restaurant and cafe.

I have suggested the important factor in this case: whether plaintiffs' use of their trade name and its advancement by advertising or otherwise, gave it a secondary meaning. The central theme is "that no man shall be allowed to mislead people into supposing that his goods are the plaintiff's, and that there can be no right or remedy until the plaintiff can show that at least presumptively this will result": Bayer Co. v. United Drug Co., 272 F. 505, 509-10 ("Aspirin"). A subsidiary part of the main question is whether such secondary meaning, if it had been acquired, extended to the territory where defendants operated. See Direct Service Oil Co. v. Honzay, 211 Minn. 361.

Where a plaintiff is not known to the trade, or where he has not shown any significance other than descriptive for his term or name, he has not shown a secondary meaning. See Annotation in 150 A. L. R. 1067, 1079 et seq. See, as example, Skinner Mfg. Co. v. General Foods Sales Co., Inc., 52 F. Supp. 432 (affirmed in 143 F.(2d) 895, C. C. A. 8th), where it was held that plaintiff had not succeeded in proving that the term "Raisin-Bran", as used by it in connection with the manufacture of a breakfast cereal had acquired a secondary meaning. The court said that as far as there was any predominance in the evidence, it was to the effect that " 'Raisin-Bran' to the public generally signified a breakfast cereal, 'consisting of', 'composed of', 'containing or including' raisins and bran".

So here, to prevail, plaintiffs must show that the public associates the words "Boys Togs" when used by defendants, with plaintiffs' business, rather than that the public takes the words in their "primary lexicographical sense", to mean boys' clothing. And the burden of proof to establish this is on plaintiffs; they must do it by substantial and preponderant evidence: American Fork & Hoe Company v. Stampit Corporation (C. C. A. 6th), 125 F.(2d) 472.

"The proprietary connotation,—'secondary meaning,'—of a word of common speech, is harder to create and easier to lose, and its fringe or penumbra does not usually extend so far as that of a coined word"; though it is wrong "to make any absolute distinction between coined, and colloquial, names", "and that it cannot be a deception [in the absence of actual deception] to use a mark among customers who do not know its proprietary connotation": Landers, Frary & Clark v. Universal Cooler Corp. (C. C. A. 2d), 85 F.(2d) 46, 48. ("Universal" on refrigerators.)

The key word here is "togs". It is an ordinary English word meaning "clothes", though it is in far less

common use than "clothes", or "boys". The unusualness of the word is a factor; it seems fairly clear that if plaintiffs had used the name "Boyclothes" and defendants "BEE CEE Boys Clothes", the use of the more common word would make it that much more difficult to establish a secondary meaning. See Collyrium, Inc., v. John Wyeth and Bro., Inc., 167 Misc. 231, 3 N. Y. S. (2d) 42. (" 'Collyrium' can scarcely be included in even the broadest category of common or usual words." p. 45.)

Do the facts show that plaintiffs' use of "Boytogs" has resulted in its acquiring a secondary meaning? The evidence adduced is wholly insufficient to establish this. Plaintiffs have been in business only since August 1945 (though registered April 1945) ; the time that the name has been before the public is an important factor: Hartman v. Cohn et al., supra. Here the time amounted to little over a year, for defendants started in December 1946, a very short period in which to establish a secondary meaning for their name. Under certain circumstances a short time will be considered sufficient: "a suddenly grown up business"; see Barton et al. v. Rex-Oil Company, Inc. (C. C. A. 3rd) 2 F.(2d) 402 (modified in 29 F.(2d) 474) ("Dyanshine" and "Dye and Shine" as to shoe polish.) Here there were no such unusual circumstances.

Advertising is a factor, and plaintiffs showed a real sum spent on this (about $5,000 per year, principally in circularizing customers by mail), but merely to show that there has been advertising is not enough; it must be shown that the advertising has been effective in helping to create secondary meaning for the trade name as well as bring in business. See Drive It Yourself Co. v. North, 148 Md. 609, 618. Even a large expenditure for advertising ($30,000 in about a year) has been held not sufficient where not enough time has elapsed to allow a secondary meaning to develop. See

Upjohn Company v. Wm. S. Merrell Chemical Co. (C. C. A. 6th), 269 F. 209 (certiorari denied, 257 U. S. 638).

Testimony of purchasers is a usual method of showing the development of a secondary meaning. Here no purchasers were offered as witnesses. Plaintiffs themselves testified that 18 or 20 people had spoken to them of their "other store' on South 7th Street, and that one woman actually came in to exchange a shirt bought in defendants' store; none of these customers testified. Aside from the questionability of that kind of testimony (defendants' counsel did not object), the absence of customers' testimony is of significance. See Steem-Electric Corp. v. Herzfeld-Phillipson Co. et al. (C. C. A. 7th), 118 F.(2d) 122, 124 ("Steem-Electric" and "Steam-O-Matic"). Plaintiffs did say they had asked some of these customers to come but they did not want to become involved in court matters. A secondary significance of a trade name is of necessity widely known, and it should not be that difficult to bring in witnesses if the name has the quality claimed for it.

Plaintiffs have not succeeded in showing that the descriptive words they use as a trade name had acquired a secondary meaning, that it is the store and its name that attracts the customer, and not the clothing. See Steem-Electric Corp. v. Herzfeld-Phillipson Co. et al., supra, p. 126. Nor is there evidence that it had acquired the status of a "catch-phrase" identifying plaintiffs' merchandise. Cf. Henry W. Fishel & Sons, Inc., v. Distinctive Jewelry Co., Inc., et al., 196 App. Div. 779, 188 N. Y. Supp. 633 ("Jewelry of Distinction").

So far we have been considering the success of plaintiffs' efforts to impress on the words "Boytogs" (or "Boys Togs" as used by defendants) a secondary meaning in their favor, and conclude that they have

not done so. This is not altogether the end of the matter. Defendants' conduct must be examined to see whether they have been guilty of unfair competition with plaintiffs regardless of the latter's inability to establish secondary meaning. Defendants are, of course, entitled to compete on a fair and equal basis with plaintiffs. The testimony showed that though they are in different neighborhoods, about 17 blocks apart, there is overlapping of the geographical areas they serve; plaintiffs have customers from all sections of the city and defendants also claimed to have, though the bulk of defendants' customers come from their immediate vicinity. However, what defendants are not entitled to do is set forth in the following quotation from Olympia Brewing Co. v. Northwest Brewing Co. et al., 178 Wash. 533, 538 ("Olympia" and "Olympic" beer) :

"No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact. The question to be determined in every case is whether or not, as a matter of fact, the name or mark used by defendant has previously come to indicate and designate plaintiff's goods, or, to state it another way, *whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business.* The universal test question is whether the public is likely to be deceived." (Italics supplied.) See Peters Packing Co., Inc., v. Oswald and Hess, Co., 334 Pa. 272, 276.

Since we hold that plaintiffs have not shown a secondary meaning for their name, it follows that if defendants are using the term "Boys Togs" in its descriptive sense only, without deliberate misrepresentation, there can be no deceit, for the average literate buyer would take the words in their ordinary meaning, and the illiterate one would not know the meaning of either plaintiffs' or defendants' trade name. See Peters Pack-

ing Co., Inc., v. Oswald and Hess Co., supra, at p. 276 ("NOLINK" and "LONG LINK" sausage). Defendants' intent is, however, a factor to be considered in this case. Ordinarily, where the effect of a defendant's action is to produce confusion in the public mind and loss to complainant, intent is not material (see Hartman v. Cohn, supra, at p. 45) ; but in those cases a plaintiff's rights arise either because of secondary meaning, or sometimes a second user of a name has been restrained though not even in competition with the first user because his identical or almost identical name would produce confusion, as in mail deliveries or banking. Thus, in Potter v. Osgood, 79 Pa. Superior Co. 397, a second user of the name "Pittsburgh Distributing Company" was restrained though in an altogether different line of business from the first. This was of course not really a case of unfair competition, for there was no competition.

Defendants here did not deliberately seek to create the impression that they were a branch of or in some way associated with plaintiffs' business and thus divert trade from the latter to themselves. We have said that the mere use of the name did not have that effect. But where it can be shown that the use is somehow fraudulent, in bad faith, plaintiffs should have redress. See Berkley Co. v. Berks, etc., 55 D. & C. 261. If defendants here made a positive attempt to take advantage of plaintiffs' customers and represented their goods and services as those of plaintiffs, we would underscore such bad faith and intent and stop them. But there is no showing of any such conduct. The evidence is not sufficient to show that defendants tried to or did "palm off" their merchandise as that of plaintiffs, or deliberately trade on their reputation in any way. Defendant Becker admitted she saw plaintiffs' store before defendants' store was opened; it may be she was struck by the name, but no intent to take advan-

tage of plaintiffs' business was shown. Since it was descriptive she had a right to use it unless plaintiffs had acquired a secondary meaning for it. There is no evidence of any conduct on the part of defendants to create the impression that they were operating plaintiffs' "other store", the expression used in plaintiffs' testimony. It has been held that a fraudulent intent or bad faith will be inferred where the junior appropriator had knowledge of the complaining party's trade-mark or trade name (see cases cited in 148 A. L. R. 44-45), and deliberately copies to gain advantage of plaintiffs, but the circumstances here do not point to an attempt to get plaintiffs' trade.

That secondary meaning is the crux of this case is shown by the fact that even the fraud question goes back to secondary meaning. For if plaintiffs' name has no secondary meaning, even an intent to take advantage of their name by its mere imitation (as a name and not for example by similar lettering) would necessarily be ineffectual, though such imitation might indicate a belief in a defendant's mind that plaintiff's name had acquired secondary meaning. Here, in the absence of secondary meaning, defendants could only compete unfairly by deliberate misrepresentation to buyers or the public that they are associated with plaintiffs. Of such misrepresentation there is no evidence; plaintiffs could obtain redress if it occurred.

Plaintiffs also testified that they had in mind opening other stores, and intimated that they would be hampered in this by defendants' use of their trade name (particularly in defendants' neighborhood), and that they had therefore refrained from opening other stores. This, of course, has no bearing on the issue; if plaintiffs have not acquired a secondary meaning as yet, they cannot restrain others because they wish to expand and their name might in the future acquire such a meaning.

Plaintiffs could have protected themselves fully had they selected a coined or arbitrary trade name; however, they chose descriptive words instead and cannot prevent others from using them also unless and until they have succeeded in imparting to such words a secondary meaning as referring to their enterprise only.

If it be said to be unfair to allow defendants to go on when they started after plaintiffs, the answer is the answer given before: "and in any such case it may be a lesser evil that plaintiff must fail of full protection than that free choice of common form should be denied to competitors": Upjohn Company v. Wm. S. Merrell Chemical Co. (C. C. A. 6th), 269 F. 209, 214.

"In cases of this sort, as in so many others, what ultimately is to be worked out is a point or line between conflicting claims, each of which has meritorious grounds and would be extended further were it not for the other": Holmes, J., in American Waltham Watch Co. v. U. S. Watch Co., 173 Mass. 85, 86.

### Conclusions of law

1. Plaintiffs have not acquired a secondary meaning in the use of their trade name "Boytogs" in connection with their business of selling boys' clothing.

2. The use by defendants of their trade name "BEE CEE Boys Togs" does not constitute unfair competition with plaintiffs.

3. Defendants should not be enjoined from the use of the name "BEE CEE Boys Togs" in the operation of their business of selling boys' clothing.

4. The bill of complaint should be dismissed.

### Decree nisi

And now, July 31, 1947, it is ordered, adjudged and decreed as follows:

1. The bill of complaint is hereby dismissed.

2. The parties shall pay their own costs.

The prothonotary is directed to enter this decree nisi and to give notice to the parties or their attorneys of record, and if no exceptions are filed within 10 days thereafter, the decree nisi shall become the final decree, as of course.