ED SULLIVAN, Plaintiff, *v.* ED SULLIVAN RADIO & T. V. INC., Defendant.

Supreme Court, Special Term, New York County, September 19, 1955.

*Arnold M. Grant* and *Max J. Rubin* for plaintiff.

*Brunon V. Boroszewski* for defendant.

LYNCH, J.   This is a motion for an injunction *pendente lite* brought by the plaintiff, Ed Sullivan, nationally known as a newspaper columnist and radio and television personality, to restrain the defendant from using the words "Ed Sullivan" in its corporate name.

The plaintiff's full name is Edward Vincent Sullivan and for more than twenty-five years he has been known in his business, professional and social life as Ed Sullivan and he alleges that the name has become identified with his personality.   He presently writes a column under that name for some thirty-five newspapers throughout the country, including one in Buffalo, New York; for some time in 1943 and again in 1946, he produced and broadcasted a radio program in a national network which included a radio station in Buffalo, New York, and since 1948 he has produced, and appeared on, a program entitled "Toast of the Town" televised each Sunday evening over the Columbia Broadcasting System television network, through 163 stations in the United States and Canada, to an estimated audience of fifty million persons.   In addition, he has indorsed certain selected products, including certain television sets manufactured and sold by highly regarded firms in that line of business.

The Ed Sullivan, whose name appears in the name of the corporate defendant, was born March 1, 1924, the son of Mr. and Mrs. John L. Sullivan, who named him Edward Joseph.   He claims, however, that he has always been known as Ed Sullivan; that for some time prior to the incorporation of the defendant, he had conducted a retail T.V. and radio shop under the filed trade name of "Ed Sullivan Radio & T.V." at 2745 Seneca Street, Buffalo, New York; that in March, 1955, he organized the defendant corporation, gave his name to it and transferred to it all the assets in his business.

Plaintiff contends that he alone is entitled to the use of the name "Ed Sullivan" and that the selection of the name "Ed Sullivan" by the defendant corporation, instead of "Edward Sullivan," "Edward J. Sullivan" or just plain "Sullivan" indicates an intent on the part of the defendant to capitalize on the greatly publicized name of the plaintiff.

In his affidavit plaintiff avers, "Unless this deceptive use of *my name* by defendant is enjoined, I will suffer irreparable

damage, which cannot be measured in dollars." (Italics ours.) And, again, " The continuation by defendant of doing business under *my name* will ever increase the threat and danger of damage to my reputation, good-will and business standing." (Italics ours.)

There is no doubt that plaintiff has achieved remarkable success in the field of entertainment as may be attested by his fifty million enthralled viewers, who watch his show on a Sunday evening. But does this preeminence of the plaintiff give him the exclusive use of a name whose bearers are legion? This court thinks not. Be he on the lowest rung of the ladder of success, a person has an equal right to the honest use of his own name, as has he who has scaled the heights.

It has long been held that every man has the absolute right to honestly use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not use any artifice or contrivance, or do anything calculated to mislead the public. A person cannot make a trade-mark of his own name and thus obtain a monopoly of it, which would debar all other persons of the same name from honestly using their own names in their own businesses (*Meneely* v. *Meneely,* 62 N. Y. 427).

There is nothing of substance in the moving affidavits to indicate that the defendant is doing anything to mislead the public. It is not engaged in a competitive business. It is in the business of repairing and selling, at retail, radio and television sets in a small store, on a thoroughfare known to Buffalonians as Seneca Street, and drawing its business from the neighborhood. That people in the neighborhood of Seneca Street, Buffalo, might have television sets which would receive for their entertainment the program of a national personality, such as the plaintiff, does not, in the opinion of the court, mislead the public in the belief that the plaintiff is in any way connected with the radio and television repair shop of the defendant.

It appears to the court that plaintiff, when he accuses defendant of appropriating his name, has assumed a fact that cannot be proved, viz., that the name " Ed Sullivan " belongs to him and to him alone. There were " Ed Sullivans " without number long before plaintiff was born — there are thousands of " Ed Sullivans " alive today — and there will be, without doubt, many " Ed Sullivans " in the future, all of which forces the conclusion that unless palpable fraud is shown, the use of such a common name cannot be restrained.

Defendant avers that it is not in competition with plaintiff and that the two are engaged in entirely different fields of endeavor. Plaintiff does not claim that he and defendant are business competitors, but contends that whether or not defendant is in a competitive business, it may not use the name " Ed Sullivan " and that an injunction is warranted to protect the name and reputation of the plaintiff. Such a contention, in the opinion of the court, is a claim to a monopoly by plaintiff on the name " Ed Sullivan," not only as to defendant, but as to the world. If the plaintiff's contention were to prevail, anyone bearing the name " Ed Sullivan ", now, or in the future, could not enter into business of any kind under his own name, without permission of the plaintiff.

In *Romeike, Inc.,* v. *Romeike & Co.* (179 App. Div. 712, 718–719, affd. 227 N. Y. 561), the court said: " The plaintiff's contention upon the record must be reduced to the bald claim that because Henry Romeike used his own name in his press clipping business for many years, and afterwards turned that business over to a corporation bearing his name, that no one else bearing the name Romeike can make use of it in that business. I do not believe that contention is sound   *   *   *. Nor would even their intent to obtain part of plaintiff's business by competition under any other name be sufficient to constitute unfair trade, unless the intent was effectuated by some overt act constituting fraud, misrepresentation or deceit   *   *   *   But in this case not only is there no such confusion of businesses between the parties as would justify the intervention of a court of equity, not only is there no proof of unfair trade upon the part of defendant, but there is as well a sufficient dissimilarity of names to prevent any person of ordinary intelligence from being misled, and there has been proved the adoption of every reasonable means by defendant to distinguish its business from that of plaintiff. Albert Romeike was an incorporator of defendant and had a right not only to use his family name in his individual business, but to have it used as a part of the corporate name of a corporation in which he was a stockholder."

The cases cited by the plaintiff herein are readily distinguishable from the instant case. It is clear to the court that no sufficient cause is set forth to warrant the granting of an injunction *pendente lite*; that a trial of the issues can be had within the next few months, and, in the interim, no irreparable damage will be caused plaintiff. The motion, therefore, is denied. Settle order.